2003 VT 71

## Kimberly Woolaver v. State of Vermont

[833 A.2d 849]

No. 02-012

Present: **Amestoy, C.J., Dooley, Morse,**[1] **Johnson and Skoglund, JJ.**

Opinion Filed August 1, 2003

---

[1] Justice Morse sat at oral argument but did not participate in this decision.

*Cassandra S. Edson* and *David Putter* of *Putter & Edson, L.L.P.,* Montpelier, for Plaintiff-Appellant.

*William H. Sorrell,* Attorney General, and *David K. Herlihy,* Special Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Johnson, J.** Plaintiff Kimberly Woolaver appeals from the Washington Superior Court's order granting summary judgment in favor of the State on plaintiff's claim that she was fired from her state job while on parental leave in violation of Vermont's Parental and Family Leave Act (PFLA), 21 V.S.A. §§ 470-474. Plaintiff contends that (1) the trial court erred in finding that she was ineligible for PFLA leave; (2) the PFLA prohibits the discharge of an employee while on PFLA leave, or, if the PFLA allows termination of an employee for performance reasons during parental leave, the facts alleged by plaintiff suggest her firing was improperly related to her pregnancy; and (3) the State made promises to plaintiff concerning her PFLA leave eligibility and reinstatement rights upon which she justifiably relied. We find the record contains disputed issues of material fact that preclude summary judgment on all of plaintiff's claims, except for the claim based on promissory estoppel. We therefore reverse the trial court's order granting summary judgment to the State, affirm the court's order denying summary judgment to plaintiff, and remand for further proceedings.

¶ 2. We review a grant of a motion for summary judgment de novo. *Agency of Natural Res. v. United States Fire Ins. Co.,* 173 Vt. 302, 305, 796 A.2d 476, 478 (2001). Summary judgment is appropriate only when the record shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Bacon v. Lascelles,*

165 Vt. 214, 218, 678 A.2d 902, 905 (1996). All reasonable doubts and inferences are resolved in favor of the nonmoving party. *Samplid Enters. v. First Vt. Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996).

¶ 3.  The factual history of this case is lengthy and complex, and not always well supported by either party with adequate citations to the record, making review of summary judgment difficult. By way of introduction, plaintiff was an employee of the Department of State's Attorneys and Sheriffs (Department) when she took leave following the birth of her son. Plaintiff had been on extended probation for performance problems, but there was no plan to fire her prior to the leave. Plaintiff's side of the story acknowledges performance problems; she argues, however, that her difficult pregnancy, as she described it, kept her from doing her best, that her performance was nonetheless adequate, and that she was working through her problems. This position is supported by the fact that her supervisor, Robin Orr, granted her leave following her son's birth and extended her probationary period to October 5, 1998. A letter from Orr dated June 9, 1998, grants plaintiff permission to use accumulated sick and annual leave time following the delivery of her child, and then to remain out on an unpaid basis until the end of the leave period. Plaintiff thus contends that she expected to return to work after her leave and continue to work with Orr to satisfy any remaining issues.

¶ 4.  Plaintiff was fired during her leave, allegedly because Orr discovered additional errors in plaintiff's work that were not known to Orr at the time Orr granted the family leave. Plaintiff disputes that she is responsible for the errors, and argues that Orr's statement that Orr needed to take action because "[plaintiff] was the one who had given birth. And I needed to make decisions about how to keep the office running . . . ." is indicative of the real reason plaintiff was fired. In sum, plaintiff's theory of the case is that, but for plaintiff's decision to take family leave, Orr would have continued to work with her through the remainder of her probation, and plaintiff believes she would have completed probation successfully.

¶ 5.  The State's position is that plaintiff's performance problems were serious and longstanding, and that plaintiff would not have successfully completed probation. The State contends that plaintiff admitted her performance problems in depositions when she testified that her work problems resulted from a difficult pregnancy. Because pregnancy is not a legal excuse for substandard job performance, the State views the case as appropriate for summary judgment once plaintiff admitted that she had not performed all aspects of her job

satisfactorily. The State contends that the timing of the firing of plaintiff does not suggest a violation of the PFLA because Orr discovered new errors after the leave began. Finally, the State asserts that plaintiff was not eligible for PFLA leave, although it admits that Orr granted plaintiff such leave and that the State changed its position after the leave began. The change of position was not communicated to plaintiff until after this lawsuit was filed.

¶ 6. The trial court granted summary judgment to the State on each of plaintiff's claims. First, the court found that plaintiff was not entitled to leave pursuant to the PFLA because she had not worked in her position as Business Manager/Personnel Manager for the Department for the one-year period required to qualify as an employee pursuant to the PFLA, citing 21 V.S.A. § 471(2). Second, the court considered the merits of plaintiff's PFLA-based claim. The court held that the State would be entitled to summary judgment even if plaintiff is found to have been entitled to PFLA leave because there was no genuine issue of material fact about whether plaintiff was terminated because of her poor performance, and the PFLA allows discharge for poor performance during leave. Third, the court granted the State summary judgment on plaintiff's promissory estoppel claim on the grounds that plaintiff took no substantial action in reliance on the State's alleged promises.[2] We reverse because there are material facts in dispute that preclude summary judgment on plaintiff's claim that she was eligible for PFLA leave, and on her claim that the State is estopped to claim that she is not eligible; material facts are also in dispute as to whether or not plaintiff would have been fired had she not been on leave. Moreover, the trial court erred in its interpretation of some provisions of the PFLA and failed to adequately consider plaintiff's estoppel claims.

## I. PFLA-based Claims

¶ 7. The PFLA permits eligible employees to take up to twelve weeks of unpaid leave during any twelve-month period for family or

---

[2] The trial court also gave a fourth ground for dismissing plaintiff's case: the "department did not terminate [plaintiff] during her period of leave. It terminated her immediately following her leave . . . ." The State, however, admits that plaintiff was terminated on July 31, 1998 and that her dental benefits were terminated on the following day, four weeks before her twelve-week period of leave under the PFLA would have ended. The State terminated plaintiff while she was on leave following the birth of her son; the question this case presents is whether that leave qualified as PFLA leave, and what substantive rights follow from such a finding.

medical reasons, including "for parental leave, during the employee's pregnancy and following the birth of an employee's child." 21 V.S.A. § 472(a)(1). The purpose of the Act is to promote "strong families" as the "foundation for a productive and competitive state." *Id.* § 470(a). The PFLA makes parental and family leave "a condition of employment" for qualifying employees. *Id.* § 470(c). Employees on PFLA leave are entitled to the continuation of employment benefits during the leave. *Id.* § 472(c). They are also entitled to reinstatement at "the same or comparable job at the same level of compensation, employment benefits, seniority or any other term or condition of the employment existing on the day leave began." *Id.* § 472(f).

¶ 8. The right to reinstatement under § 472(f), however, is not absolute. There is no right to PFLA leave where "prior to requesting leave, the employee had been given notice or had given notice that the employment would terminate." *Id.* § 472(f). Moreover, an employer has no obligation to reinstate an employee after the conclusion of parental or family leave where

> the employer can demonstrate by clear and convincing evidence that: (1) during the period of leave the employee's job would have been terminated or the employee laid off for reasons unrelated to the leave or the condition for which the leave was granted ....

*Id.*

¶ 9. Thus, in a discharge case under § 472(f), a plaintiff must demonstrate that (1) plaintiff was an employee within the meaning of the PFLA, as defined in § 471(2); (2) the employer is an employer under the PFLA, as defined in § 471(1); (3) the employer refused to reinstate plaintiff-employee after PFLA leave; (4) prior to requesting leave the employee had not been given notice or given notice "that the employment would terminate," pursuant to § 472(f); and (5) employee was terminated for reasons related to the leave or the condition for which the leave was granted, as prohibited by § 472(f). Once the plaintiff makes this prima facie case, Vermont's PFLA shifts both the burden of production *and* the burden of persuasion to the employer to prove by clear and convincing evidence that the reasons for termination were not related to the employee's request for leave or the condition for which leave was sought. *Id.* § 472(f).[3]

---

[3] The clear and convincing evidence standard imposed upon employers who dismiss employees while on leave is a higher standard than the one normally required in civil

¶ 10. As we discussed in *In re N.H.*, 168 Vt. 508, 724 A.2d 467 (1998),

> the clear-and-convincing-evidence standard represents a very demanding measure of proof. Although something less than proof beyond a reasonable doubt, it is substantially more rigorous than the mere preponderance standard usually applied in the civil context, and is generally said to require proof that the existence of the contested fact is "highly probable" rather than merely more probable than not.

*Id.* at 512, 724 A.2d at 469-70.

¶ 11. With this outline of the statute in mind, we turn to plaintiff's claims on appeal that (1) the trial court erred in finding that she did not meet the eligibility requirements of the statute, and that even if she did not meet the eligibility requirements, the State is estopped from claiming that she did not; and (2) the State was not permitted to fire her, even for performance reasons, while she was on family leave, and even if the State could fire her, the trial court erred by placing the burden of proof on plaintiff to show motivation and improperly resolved material disputed facts against her.

## A. PFLA Eligibility

¶ 12. Plaintiff began working as Business Manager/Personnel Officer at the department on July 21, 1997. Her leave began on June 3, 1998. She was terminated on July 31, 1998. The trial court found that

---

cases or under the federal equivalent of the PFLA. Courts have held that under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, the plaintiff has the burden of establishing "by a preponderance of the evidence, that he is entitled to the benefit he claims." *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). See 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); *Beal v. Rubbermaid Commercial Prods. Inc.*, 972 F. Supp. 1216, 1229 (S.D. Iowa 1997) ("In a retaliation claim brought pursuant to the FMLA ... the plaintiff bears the ultimate burden of proving that FMLA leave was the determinative factor in the employment decision at issue."). Even courts that apply the "burden shifting" analysis following *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to determine whether a plaintiff has presented a circumstantial case of wrongful discharge hold that the ultimate burden of proving discrimination remains on the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (under *McDonnell Douglas* burden shifting, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

plaintiff's one-year qualifying period for PFLA eligibility was not met because one year had not elapsed between July 21, 1997 and the beginning of the leave on June 3, 1998.

¶ 13. Plaintiff makes two independent arguments that could support her claim to PFLA coverage at the time she was terminated, one based on an interpretation of the statute and one based on an estoppel theory. First, with respect to the statute, plaintiff contends that the question of eligibility does not hinge upon her employment status as of June 3, 1998 (the day her parental leave commenced) but upon her employment status on July 31, 1998 (the day she was terminated). She argues that where an employer has allowed an employee to take parental leave even when the employee has not technically qualified for PFLA leave (under the employer's more generous leave policies), the statute should be construed to allow her to qualify as an employee under the PFLA definition part-way into her leave period. She further contends that she satisfied the PFLA definition of employee no later than July 21, 1998, one year from the date on which she started working at the department.

¶ 14. We agree with plaintiff in principle that the clock did not stop running for purposes of qualifying for the PFLA on the date that she commenced her leave. Because the PFLA is a remedial statute, we construe it liberally to accomplish the Legislature's remedial intent. *Town of Killington v. State,* 172 Vt. 182, 191, 776 A.2d 395, 402 (2001). The statute does not explicitly state when eligibility for PFLA leave is determined, so we are limited to construing the PFLA's definition of employee: "a person who, in consideration of direct or indirect gain or profit, has been continuously employed by the same employer for a period of one year for an average of at least 30 hours per week." 21 V.S.A. § 471(2). Although the statute is silent on the question of whether time spent on accrued sick leave or annual leave counts in calculating the thirty hours of work per week average, the only sensible construction is that it does. Otherwise, an employee who worked thirty hours a week for fifty one weeks and then took accrued vacation or sick leave in the fifty-second week would not qualify for PFLA protection in her fifty-third week, even though she had been on the payroll for the one year minimum established by the statute. Given this construction, it would be arbitrary to hold, in a case such as plaintiff's where several weeks of accrued leave balances are used at the beginning of a period of parental leave, that the hours of accrued leave are not counted towards time worked for purposes of PFLA eligibility. As long as plaintiff was using accrued leave balances that

she had earned, the clock was still running towards the fifty-two weeks of continuous employment required for PFLA eligibility, just as she was continuing to accrue additional leave balances. Once she exhausted her leave balances, however, time spent on unpaid leave would not count towards the thirty hours per week required for PFLA purposes, as long as the State's personnel policy does not permit the accrual of seniority and other benefits when an employee is on unpaid leave. See *Heibler v. Dep't of Workforce Dev.*, 2002 WI App 21, ¶¶ 9-13, 639 N.W.2d 776, 780-81 (2001) (determining whether an employee could accrue salary, seniority, and benefits that normally would have accrued during her leave under the Wisconsin Family and Medical Leave Act in accordance with governing provisions of collective bargaining agreement and state administrative regulations). Although the trial court erred in its narrow construction of the statute, we cannot tell on the present record when plaintiff's leave balances were exhausted and remand this issue for further proceedings.

¶ 15. Plaintiff's second claim is that the State should be estopped from denying coverage under the PFLA because it specifically granted her the leave. As we understand plaintiff's argument, she claims detrimental reliance upon the State's oral promises as well as upon two documents, one a personnel action and one a letter from Orr indicating that plaintiff was entitled to leave under the PFLA. Although we emphasize that the significance of these documents is unclear from this record and hotly disputed by the parties, individually or together the documents *may* be sufficient to estop the State from denying plaintiff eligibility for PFLA leave. See *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002) (recognizing a district court's ability to equitably estop an employer from contesting an employee's eligibility to assert a claim under the federal FMLA when a letter from the employer to the employee had stated that the employee's entire 34-week leave qualified under the FMLA and the employee relied on the specified leave time to his detriment); *Woodford v. Cmty. Action of Greene County, Inc.*, 268 F.3d 51, 57 (2d Cir. 2001) (observing that the "doctrine of equitable estoppel itself may apply where an employer who has initially provided notice of eligibility for [FMLA] leave later seeks to challenge that eligibility").[4]

---

[4] Plaintiff's complaint and memorandum in opposition to summary judgment confuse the estoppel issue by conflating equitable estoppel and promissory estoppel. The confusion is not clarified by the trial court's opinion, which deals only with a promissory estoppel claim. With respect to plaintiff's coverage under the PFLA, the claim is more accurately characterized as equitable estoppel because the argument centers on whether the State

¶ 16. The first document that plaintiff claims to have relied upon is a personnel action. The State has admitted that on or about August 1, 1997, a personnel document was generated with regard to plaintiff that included the phrase "ADJUSTED HIRE DATE FOR LEAVE & RIF IS 05/02/87." The document refers to plaintiff's original hire date with the State and her years of service in the Agency of Transportation. Her service with the State was briefly interrupted before she went to work at the Department of Sheriffs and State's Attorneys. In attempting to explain the meaning of this document, the State cites a contract provision from the agreement between the State and the Vermont State Employees' Association that purports to govern reemployment situations such as plaintiff's and provides that after successful completion of probation the employee shall have the "length of continuous previous ... service re-credited for the purpose of subsequent leave accrual and RIF [reduction in force] rights." The State argues that this provision applies only to accrual rates and that plaintiff should not have construed it to provide her with PFLA rights. Plaintiff asserts, however, that she had become pregnant only "after learning of, and in reliance on, [the State's] grant of an 'adjusted hire date' of 5/2/87 for me." We also note that plaintiff was an exempt employee, not a classified employee, and the extent to which this personnel document affected her employment was not adequately explained by the document, the affidavit in support of summary judgment from Tom Ball of the Department of Personnel, or counsel at oral argument.

¶ 17. The second document that plaintiff puts forward as the basis for estoppel is the State's letter, signed by Robin Orr and dated June 9, 1998, representing to plaintiff that the leave she was taking had been approved as PFLA leave. Orr's letter to plaintiff includes the following sentence: "With your leave commencing on June 3, 1998 the Parental and Family Leave Act (PFLA) entitles you to be out of the office until August 26, 1998." Plaintiff started her leave on June 3, 1998, six days before receiving this letter, but she alleges that the letter reflected prior verbal authorization for PFLA leave. The State asserts that

---

should be stuck with the mistake it now claims it made when it granted plaintiff a leave under the PFLA, rather than the content of particular promises the State allegedly made about continuing plaintiff's probationary period and giving her more training. See *Triology Variety Stores, Ltd. v. City Prods. Corp.*, 523 F. Supp. 691, 697 n.3 (S.D.N.Y. 1981) (distinguishing between equitable and promissory estoppel, explaining that "[e]quitable estoppel depends on a misrepresentation of an existing fact, while promissory estoppel requires a promise concerning future intent"). We address the promissory estoppel claim in *infra*, Part II.

there could be no detrimental reliance on this letter because plaintiff would have taken the leave time following the birth of her son regardless of whether she believed she qualified for PFLA leave. While it is true that plaintiff would have been compelled to take some time off work to deliver her baby, plaintiff's assertion of reliance relates specifically to the protections afforded her by the PFLA, which, as we hold *supra*, at ¶¶ 7-10, include the right not to be fired for reasons related to parental leave of a certain length of time.

■ ¶ 18. A party invoking equitable estoppel has the burden of establishing the following elements:

> (1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct of the party to be estopped to his detriment.

*Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 524, 739 A.2d 1241, 1244-45 (1999).

■ ¶ 19. We find that plaintiff's pleadings allege each of these elements of estoppel, but virtually all of the facts surrounding the claim, including the import of the personnel document and the degree of plaintiff's reliance, are in dispute and cannot be resolved on this record. Further proceedings are necessary to determine whether plaintiff has met her burden of proof. Because we cannot resolve the eligibility question, we turn to the other grounds on which plaintiff's claim was dismissed by the trial court in the event she is found eligible on remand.

## B. Rights Protected by the PFLA

■ ¶ 20. Plaintiff's second claim on appeal is that, assuming she is eligible for PFLA leave, the trial court erred in holding that the statute permits her to be fired for performance reasons during the leave period. She argues that the statute protects an employee on leave unless her job has been eliminated due to a reduction in force or other economic reason. She claims that six other jurisdictions with similar statutes have prohibited firing employees while they are on parental leave, and that the statutory language of the Vermont PFLA supports the same construction. We reject all of plaintiff's arguments

and hold that the PFLA does not protect an employee from being fired, as long as the employer's decision withstands scrutiny that the firing is not related to the leave.

¶ 21. The statute provides, in § 472(f), that there is no right to reinstatement if the employer can demonstrate by clear and convincing evidence that "during the period of leave the employee's job would have been terminated or the employee laid off for reasons unrelated to the leave or the condition for which the leave was granted." Plaintiff reads the phrase "*job* would have been terminated" as referring to situations where a position has been eliminated due to reorganization, essentially synonymous with the phrase "employee laid off." We are not convinced by plaintiff's construction because it assumes a redundancy in the statute, that is, it treats the phrase "job would have been terminated" as a special variation on the reasons that an employee could be laid off. We conclude the more plausible construction is that an employer may deny reinstatement to an employee if the *employee* would have been terminated for reasons not related to the leave or the condition for which the leave was granted. See *State v. Baldwin*, 140 Vt. 501, 512, 438 A.2d 1135, 1141 (1981) ("[W]e are reluctant to discard statutory language as inadvertent or as mere surplusage when it is not necessary in order to effectuate what we conceive to be the intent of the legislature . . . ."); see also *State v. Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) ("In construing a statute, this Court . . . if possible, gives effect to every word, clause and sentence."); *State v. Ben-Mont Corp.*, 163 Vt. 53, 57, 652 A.2d 1004, 1007 (1994) ("Our interpretation must . . . if possible, give meaning and effect to all the statutory language.").

¶ 22. Our interpretation furthers a fair and rational result. See *Ben-Mont*, 163 Vt. at 57, 652 A.2d at 1007 (holding that this Court's interpretation of a statute "must further fair, rational results"). As the State argues, an interpretation of the PFLA that does not allow dismissal while an employee is on leave would require an employer who discovers evidence of serious misconduct or unacceptable performance when the employee is on leave to reinstate that employee no matter how clear the evidence might be of wrongdoing. We cannot find that intent in the statutory language. See *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 117, 702 A.2d 124, 128 (1997) (statutes construed with presumption "that the Legislature does not intend an interpretation that would lead to absurd or irrational consequences").

¶ 23. Moreover, no other court has interpreted a similar statute to prohibit discharge for performance problems during leave. Upon

examination of the six jurisdictions cited by plaintiff that she claims prohibit dismissal during leave except in cases of economic necessity, none so hold.[5]

---

[5] Plaintiff's cite to Colorado statutes is incorrect; Colorado has no family leave law of general application that we can discover; the only relevant provision is found in the Colorado Administrative Regulations for State Employees, which clearly allows discharge for performance. 4 Colo. Code Regs. § 801, P-5-35 (2003), available at WL 4 COADC801 ("The employee does not have restoration rights if the employment would not have otherwise continued had the FML leave not been taken, e.g., discharge due to performance . . . ."). Plaintiff's cite to the statutes of the District of Columbia is also erroneous. The D.C. law mirrors the federal FMLA language and includes the same section allowing termination while on leave. The federal section on "restoration to position" states that "[n]othing in this section shall be construed to entitle any restored employee to . . . (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3). The District of Columbia's provision is almost identical, stating that no restored employee is entitled to "[a]ny right, employment benefit, or position of employment other than any right, employment benefit, or position of employment to which the employee would have been entitled had the employee not taken the family or medical leave." D.C. Code Ann. § 32-505(e)(2) (2003). Plaintiff concedes that the FMLA's provision allows discharge during leave for poor performance, citing as an example case *Hubbard v. Blue Cross Blue Shield Ass'n*, 1 F. Supp. 2d 867, 875 (N.D. Ill. 1998) (holding that under FMLA an employee is not entitled to reinstatement if employer would have validly terminated her had she not been on leave). Plaintiff is yet again incorrect in her citation of California law. She cites a key employee exception in California law, found at Cal. Gov't Code § 12945.2(r)(1) (2003), which has no bearing on the question of whether or not an employee can be dismissed for cause while on leave. While the California family leave statute does not explicitly discuss whether discharge for cause is allowed, case law from California suggests that an employer may lawfully terminate an employee for misconduct while the employee is on leave. See *Nelson v. United Technologies*, 88 Cal. Rptr. 2d 239, 249 (Ct. App. 1999) (holding that employee fired during leave under the California Family Rights Act "has the burden of proving the proffered justification was a pretext for discrimination"). The Connecticut and Montana statutes cited by plaintiff establish that employers are not required to reinstate employees after leave if "the employer's circumstances have so changed as to make it impossible or unreasonable to do so." Conn. Gen. Stat. § 46a-60(a)(7)(D) (2003); Mont. Code Ann. § 49-2-311 (2003). We can find no case law interpreting this language to preclude discharge for cause during leave, and so we can make no determination about how it would be construed by the Connecticut or Montana courts. This leaves a single state of the six cited by plaintiff, New Jersey. New Jersey's statute providing for restoration of position on expiration of leave clearly denies reinstatement where there has been a "reduction in force or layoff," and makes no mention of whether reinstatement can be denied on other grounds. See N.J. Stat. Ann. § 34:11B-7 (2003). However we find no cases from New Jersey indicating that restoration is mandatory even in cases where poor performance would otherwise lead to discharge. Certain cases seem to tilt the other way. A New Jersey court has held that one of the elements of a cause of action under New Jersey's Family Leave Act is that "plaintiff was performing satisfactorily."

¶ 24. Finally, our construction is sensible in light of the heavy burden the Legislature placed on employers to prove that the discharge of an employee on leave was unrelated to the reason for the leave. In other words, the teeth of the statute is in the employer's burden of proof, rather than in an absolute protection not to be fired while on leave. See 21 V.S.A. § 472(f).

¶ 25. Applying the clear and convincing evidence standard to the record before us, we cannot uphold summary judgment for the State, bearing in mind that this is an appeal from a grant of summary judgment in which the employee must be given the benefit of all reasonable inferences. We note initially that the trial court does not mention the high burden of proof and does not appear to place that burden on the employer; instead, the trial court indicates that the burden is on plaintiff to establish an entitlement to the protection of the PFLA by a preponderance standard. Whatever the trial court meant, however, our review of summary judgment is de novo, and therefore we undertake a review of the evidence, placing the burden of proof on the State.

■ ¶ 26. The State has offered affidavits from Robin Orr, plaintiff's supervisor, and Richard LeBus, the person who held the position of business manager before plaintiff and had been asked to train her in budget matters when he was hired for a new position as a computer information specialist. Both assert that plaintiff did not have the background or skills needed to perform the job of business manager and made numerous mistakes throughout the period of her employment that caused them not to trust her work. The State's lack of written documentation of plaintiff's performance during the time she worked at the Department consigns it, however, to reliance on after-the-fact accounts of plaintiff's performance. Moreover, its extension of her probationary period to October and its failure to take action against plaintiff prior to leave remains unexplained. See *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 604-05 (7th Cir. 1998) (holding that a jury could reasonably find that the timing of employer's firing of employee days after she requested medical leave was not merely a coincidence). The State is correct that the timing of discharge might not be sufficient, in and of itself, to prove that the firing was unlawful, but the additional unexplained facts are sufficient to place the burden of proof on the State.

*DePalma v. Bldg. Inspection Underwriters*, 794 A.2d 848, 859 (N.J. Super. Ct. App. Div. 2002).

¶ 27.  The State asserts in response, through Robin Orr's affidavit, that it made additional discoveries about the extent of plaintiff's performance problems after plaintiff's leave began, such as the discovery that plaintiff had told two other employees to stop paying bills because of a budget deficit erroneously predicted by plaintiff, and that plaintiff's termination occurred because of these new discoveries. Plaintiff has denied giving this instruction to employees and offers evidence showing that the employees in question were not in the office on the day she completed the erroneous budget calculations. The record does not include affidavits from either employee about this issue. Plaintiff also asserts that she knew the figures in the budget did not reconcile, but because she had scheduled her labor to be induced that afternoon, she did not have time to fix them. She claims to have informed LeBus prior to her departure that there was a problem with the budget that needed further work. Orr alludes to other problems as well, but they are not in the record before us. Thus, we cannot. conclude on this record that the State has met its burden. If, on remand, the State is able to prove that it made additional discoveries demonstrating plaintiff's poor judgment or incompetence, or resolve the factual issues that now exist, the evidence may meet the clear and convincing evidence standard, but the evidence is too confused and contradictory at this point to make a finding in favor of the State.

¶ 28.  To the extent that plaintiff claims that her performance problems were due to her pregnancy, we clarify that the PFLA neither excuses performance problems caused by the condition for which PFLA leave is taken nor requires an employer to give an employee an opportunity to show improved job performance following leave. Plaintiff is essentially attempting to bootstrap a discrimination claim of the kind that could be brought under the Fair Employment Practices Act (FEPA), 21 V.S.A. §§ 495-496, into her PFLA claim. We have held that pregnancy discrimination qualifies as sex discrimination under FEPA, if employers treat workers who request accommodation for pregnancy disability differently from workers requesting accommodation for other disabilities. *Lavalley v. E.B. & A.C. Whiting Co.*, 166 Vt. 205, 210-12, 692 A.2d 367, 370-71 (1997). If plaintiff felt unable to perform her job because she was disabled by her pregnancy, she was entitled to ask the State to accommodate her, but any rights plaintiff may have had to accommodation under the FEPA do not provide a legal excuse to her discharge while on pregnancy leave under the PFLA.

## II. Promissory Estoppel

¶ 29. Plaintiff's final assignment of error challenges the trial court's decision that the State is not obligated to reinstate plaintiff under the doctrine of promissory estoppel. As discussed in Part I.A above, plaintiff's claims under an estoppel theory are of two distinct types. The first is that written or oral promises regarding plaintiff's eligibility for PFLA leave estop the State from denying that she was covered by the PFLA when she was fired. This is a claim for equitable estoppel. The second is that each of the rights that flow from PFLA eligibility — leave and reinstatement — should be treated as separate promises implied by the State's assurance that she was covered by the statute. Under this promissory estoppel theory, plaintiff adds another promise that she would receive "particularized supervision" upon her return to work, presumably stemming from the State's extension of her probationary period. The trial court treated plaintiff's entire estoppel claim as one for promissory estoppel, characterizing the promises as a promise for continued employment and for a further extended probationary period, and found those promises too indefinite to hold the employer liable. With the caveat that plaintiff has alleged the elements of a viable equitable estoppel argument that could support her claim to eligibility for PFLA coverage, see *supra*, at ¶¶ 15-19, we agree with the trial court that her claim under a promissory estoppel theory must fail.

¶ 30. To enforce a claim for promissory estoppel, plaintiff must show "'[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance'" and that "'injustice can be avoided only by enforcement of the promise.'" *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 573, 613 A.2d 1277, 1281 (1992) (quoting Restatement (Second) of Contracts § 90(1) (1981)). We recently discussed promissory estoppel in the context of a wrongful termination action and noted that courts require a "promise of a specific and definite nature before holding an employer bound by it." *Dillon v. Champion Jogbra, Inc.*, 175 Vt. 1, 10, 819 A.2d 703, 710 (2002).

¶ 31. The weakness in plaintiff's promissory estoppel argument is that the alleged promises do not go far enough to extend to plaintiff the kind of protection she seeks. The thrust of her argument is that her employer should reinstate her and continue her probationary period without any consideration of performance problems that the

State claims arose after she went on leave and that caused her discharge. In other words, plaintiff would have us conclude that the promise of continued employment and an extended probationary period guaranteed that she would not be fired for any reason during the period following her pregnancy. Such an absolute guarantee is not reasonably implied by the State's actions and alleged promises. To the extent that plaintiff reasonably relied on the State's promises, what she relied on was the right to leave and reinstatement that is protected by the PFLA. The statute, rather than promissory estoppel, is the basis for any relief to which she might be entitled.

¶ 32. Further, as the trial court concluded, the fact that plaintiff was on probation and acknowledged that there were legitimate questions about her performance make it impossible to justify a finding that the State's promises regarding leave reasonably induced reliance that her employment was guaranteed for any specific length of time. Under the doctrine of promissory estoppel, the trial court was correct that plaintiff's claim was insufficient to create any independent liability for the State.

*Reversed and remanded.*

