Lenair v. Shoreham Tel. Co., No. 294-4-09 Rdcv (Cohen, J., July 1, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT
## RUTLAND COUNTY

| | | |
|---|---|---|
| | ) | |
| **RHONDA LENAIR, Trustee under the** | ) | **Vermont Superior Court** |
| **agreement of Trust of the Lisa Trust,** | ) | **Civil Division, Rutland Unit** |
| **of Benson, Rutland County,** | ) | **Docket No. 294-4-09 Rdcv** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SHOREHAM TELEPHONE CO, INC.,** | ) | |
| **JOHN DERRICK, and TOWN OF BENSON,** | ) | |
| | ) | |
| **Defendants** | ) | |

## DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, FILED DECEMBER 1, 2009, and MARCH 12, 2010

This case arises out of the alleged faulty burying of utility lines on the plaintiff Rhonda Lenair's property. The defendants move summary judgment, arguing that Ms. Lenair is estopped or precluded from bringing her current claims against them because the issue of damages has already been fully determined by a federal jury in a case against the prior property owners.

Rhonda Lenair is represented by Herbert G. Ogden, Esq. The defendants Shoreham Telephone Co., Inc. and John Derrick are represented by Gary F. Karnedy, Esq., Kevin M. Henry, Esq., and Alexandra H. Bolanis, Esq. The defendant Town of Benson is represented by Peter M. Bevere, Esq.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In response to an appropriate motion, judgment must be rendered "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of material fact exists, the court accepts as true allegations made in opposition to the motion for summary judgment, provided they are supported by evidentiary material. *Robertson v. Mylan Labs*, *Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356. The nonmoving party then receives the benefit of all reasonable doubts and inferences arising from those facts. *Woolaver v. State*, 2003 VT 71, ¶ 2, 175 Vt. 397. Furthermore, where, as here, "the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18 (1995) (internal citations omitted).

## BACKGROUND

In October 2002, Rhonda Lenair and her late mother purchased a house on Park Hill Road in Benson, Vermont, for $747,000 from Wayne and Lois Gauthier. In April 2003, Ms. Lenair discovered that she, and not a utility company, was the owner of the underground utility lines that serviced her property. As a result, Ms. Lenair sued the Gauthiers in United States District Court, District of Vermont, alleging claims for consumer fraud, fraudulent nondisclosure, negligent nondisclosure, and breach of deed of warranty (the matter *Lenair v. Gauthier*, 1:03-cv-00299-jgm is hereafter referenced as "previous litigation").

In the previous litigation, Ms. Lenair alleged that the Gauthiers were liable for failing to disclose the fact that would own the underground utility, and thus be responsible for it. Furthermore, she alleged that the utility ran under a neighboring property, outside of the easement area granted for it. She alleged that she would not have purchased the property from the Gauthiers had she known these facts.

Under Ms. Lenair's claim for consumer fraud, she sought damages in the amount of the consideration she paid for the property ($747,000), attorney's fees and expenses, and exemplary damages. Under her claim for fraudulent nondisclosure, she sought to rescind the purchase of the property and to recover all damages, including special damages, to which she was entitled. Under the claim for negligent nondisclosure, she sought "all damages, including special damages, to which she is entitled." And, under the claim for breach of warranty in the previous litigation, Ms. Lenair sought damages for the lessened value of the property, the price she would have to pay the neighbors for a corrective easement, or the expense of having a substitute electrical line built.

According to Ms. Lenair's complaint in the previous litigation, Central Vermont Public Service gave her an estimate of $41,052.04 to install an electrical system in accordance with CVPS standards. Adams Electric estimated that items not covered by the CVPS estimate, such as trenching and conduit, would total another $20,289. Neither of these estimates included landscaping expenses.

A jury trial in the previous litigation was held from December 13-15, 2006. At the close of evidence, the court dismissed the counts for consumer fraud, fraudulent nondisclosure, and breach of deed of warranty. The only count that went to the jury was for negligent nondisclosure.

As to damages, the jury instructions set forth: "The plaintiff is entitled to be compensated for damages proximately caused by the defendant's conduct. The plaintiff in this case seeks as damages the costs she will incur to replace the underground primary power line serving the house she bought from the defendants." Ms. Lenair did not challenge the instruction regarding damages during the charging conference with the court.

After deliberation, the jury awarded Ms. Lenair damages in the amount of $36,500. She filed a motion for additur or new trial on damages, asking the court to amend the judgment to $66,703.44. Ms. Lenair claimed that the jury award of $36,500 was the result of compromise. The court denied the motion for additur, finding that the jury could have reasonably concluded that her estimate of damages was too high. Ms. Lenair appealed both the December 15, 2006 judgment and the denial of her motion for additur. The United States Court of Appeals for the Second Circuit affirmed the jury award and the judgment of the district court. The $36,500 judgment in the previous litigation was satisfied in full on April 16, 2009.

One week later, on April 23, 2009, Ms. Lenair filed a complaint in this Court against defendants Shoreham Telephone Co., Inc., John Derrick, and the Town of Benson, Vermont. In the instant litigation, Ms. Lenair alleges claims of negligence, breach of contract, and consumer fraud against Shoreham Telephone and Mr. Derrick arising out of the installation of the underground utilities for a previous owner of the property. Ms. Lenair alleges that the defendants were negligent in failing to bury the power line to the correct depth under Vermont law. She further alleges that the defendants committed consumer fraud because they knew they had not buried the power

line correctly and they could foresee that the representation that it was buried correctly would cause someone to buy the property from the former owner.

Ms. Lenair seeks the following damages on the negligence and breach of contract claims: (1) the estimate of $41,052.04 from CVPS to install an electrical system in accordance with CVPS standards; (2) the estimate of $20,289 from Adams Electric to bury the line from Park Hill Road to her house; (3) landscaping expenses and possible business interruption, or, the reduction in value of the property if the underground utility is not replaced, which she alleges is between $75,000 to $100,000.

In addition, for the consumer fraud claim, Ms. Lenair seeks the value of consideration given to purchase the property ($747,000); other sums spent in reliance on the misrepresentations; reasonable attorney's fees and expenses, minus the $36,500 judgment in the previous litigation; and exemplary damages.

Against the Town of Benson, Ms. Lenair alleges that the town clerk negligently mis-indexed the 1999 easement governing the underground power line. It was granted to the Gauthiers' predecessor in title, Robert Cunningham. Ms. Lenair alleges that the 1999 easement was mis-indexed under "Cunningham Robert" (missing a comma), rather than "Cunningham, Robert" (with a comma). As a result, the 1999 easement entry was two pages away from where it should have been, causing Ms. Lenair's attorney to miss it in his search. Ms. Lenair alleges that the mis-indexing proximately caused her and her mother to purchase property they would not otherwise have bought.

Ms. Lenair seeks the same damages against the Town of Benson for mis-indexing as she does against Shoreham Telephone and Mr. Derrick for negligence and breach of

contract. Finally, in Ms. Lenair's prayer for relief, she requests that her judgment be reduced by the $36,500 judgment collected in the previous litigation.

## DISCUSSION

### I. Consumer Fraud

The plaintiff alleges that it was an unfair and deceptive act for the defendants to bury the utility line improperly while allowing Robert Cunningham, a predecessor in interest, to believe it had been buried correctly. The plaintiff argues that the defendants could foresee that their failure to properly install the lines and their failure to state the risk of what they had installed would cause future owners to buy without knowing the risks.

Defendants Shoreham Telephone and John Derrick argue that they are entitled to judgment as a matter of law because the plaintiff has provided no evidence that she relied on any representation or practice of the defendants, or that her injuries were the result of any representation or practice of the defendants.

The Consumer Fraud Act is designed to protect against unfair and deceptive acts or practices in commerce. 9 V.S.A. § 2453(a). The CFA is intended to "protect this state's citizens from unfair and deceptive business practices and to encourage a commercial environment highlighted by integrity and fairness." *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 536 (1983).

A "deceptive act or practice" is a "material representation, practice or omission likely to mislead a reasonable consumer." *Bisson v. Ward*, 160 Vt. 343, 351 (1993). To prove that a defendant employed deceptive acts and practices in commerce, a plaintiff must establish with proof three elements: (1) the representation or omission at issue was likely to mislead consumers; (2) the consumer's interpretation of the representation was

6

reasonable under the circumstances; and (3) the misleading representation was material in that it affected the consumer's purchasing decision. *Jordan v. Nissan America, Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465.

The CFA operates under an objective standard. The first element requires the consumer to prove that "the representation or omission had the tendency or capacity to deceive a reasonable consumer" when viewed in light of all the circumstances, and the second element measures the reasonableness of the plaintiff's interpretation. *Id.* at ¶¶ 5-8. The third element, of materiality, is also "generally measured by an objective standard, premised on what a reasonable person would regard as important in making a decision." *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998).

The gist of Plaintiff's argument is that the defendants' statement to Mr. Cunningham, upon completion of the job, that they had properly installed the power line was passed on by Mr. Cunningham to the Gauthiers, who then believed the line was properly installed, and then finally from the Gauthiers to the plaintiff when she bought the property.

The plaintiff, however, has not provided any evidence that the defendants' representation to Mr. Cunningham (over 20 years ago) that they had properly installed the power line was material, in that a reasonable person would regard it as important in making a decision. The plaintiff bought the property under the assumption that she did not even own the power line. In her complaint, she alleges that "[t]he plaintiff and her late mother would not have purchased the property if they had known that they would own the electrical utility supplying it." Thus, according to the plaintiff it was not material

7

to her decision to purchase the property whether the line was installed to the proper depth, only whether she owned the line.

The Court fails to see how Plaintiff's claim against the defendants is anything other than a classic construction negligence or breach of contract claim. The plaintiff's reading of the CFA would turn every case of negligent construction into a claim for consumer fraud. The defendants are entitled to judgment as a mater of law on the claim of consumer fraud.

### II. Issue Preclusion

Defendants Shoreham Telephone, Mr. Derrick, and the Town of Benson argue that the plaintiff is estopped or precluded from seeking damages against them because the issue of damages for replacement of the power line was decided by a federal jury in the previous litigation. The jury awarded plaintiff $36,500 in compensatory damages and the judgment was satisfied in full. The defendants also raise the issue of satisfaction of judgment. The Court will first address issue preclusion.

"Collateral estoppel, or issue preclusion, bars the subsequent litigation of an issue that was actually litigated and decided in a prior case where that issue was necessary to the resolution of the dispute." *Scott v. City of Newport*, 2004 VT 64, ¶ 8, 177 Vt. 491. It serves the dual purpose of protecting litigants from the burden of relitigating identical issues and of promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

The Vermont Supreme Court has abandoned the doctrine of mutuality regarding collateral estoppel. *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 264-66 (1990). The Court quoted Justice Traynor in rationalizing its abandonment: "It would be unjust to

permit one who has had his day in court to reopen identical issues by merely switching adversaries." *Id*. at 264-65 (quoting *Bernhard v. Bank of America*, 122 P.2d 892, 895 (Cal. 1942)). The Court found that issue preclusion without requiring mutuality of parties "protects the court system and potential litigants from the burdens of relitigation, encourages litigants to join all parties in one action, and decreases the chances of inconsistent adjudication." *Trepanier*, 155 Vt. at 265. Vermont permits the "defensive use of collateral estoppel," as in the instant case, where a defendant argues that a plaintiff is estopped from asserting a claim that he or she had previously litigated on the same issue against another defendant. *Id*. at 266 n.2.

Issue preclusion should be found only when the following criteria are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair. *Id*. at 265.

The Court has further stated that when examining the final two criteria, "courts must look to the circumstances of each case. Among the appropriate factors for courts to consider are the type of issue preclusion, the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases." *Id*. In order to satisfy the final two criteria, the party opposing issue preclusion must show the existence of circumstances that make it appropriate for an issue to be relitigated. *Id*. at 265-66.

The critical inquiry when determining whether issue preclusion applies "is whether the party to be bound has had a full and fair opportunity to contest an issue resolved in an earlier action so that it is fair and just to refuse to allow that party to relitigate the same issue." *Trepanier*, 155 Vt. at 266. "The absence of mutuality will not preclude the use of collateral estoppel unless the party denying the estoppel shows special circumstances indicating unfairness." *Id*.

Here, the first criterion is met because the plaintiff was the plaintiff in the previous federal litigation against the former property owners, the Gauthiers.

In regards to the second criterion, the issue of damages is subject to the doctrine of collateral estoppel. See *Bridgestone/Firestone North America Tire, L.L.C. v. Naranjo*, 79 P.3d 1206, 1211 (Ariz. Ct. App. 2003) (holding collateral estoppel prevented plaintiffs from relitigating the issue of total damages where jury in previous litigation had assessed "full damages"); see also *Greenleaf v. Garlock*, 174 F.3d 352, 358-59 (3d Cir. 1999) (plaintiff's prior state court jury verdict carried issue preclusive effect upon the issue of damages in subsequent action); *Kathios v. General Motors Corp.*, 862 F.2d 944, 946-47 (1st Cir. 1988) (resolution of the issue of bodily damages in first case collaterally estopped plaintiff from seeking redetermination of his damages in subsequent action); *Ritchie v. Landau*, 475 F.2d 151, 155-56 (2d Cir. 1973) (plaintiff estopped from relitigating issue of damages after recovering in arbitration proceeding).

The second criterion is met because the issue of damages for replacement of the underground power line was resolved by a final judgment on the merits in the previous litigation. The federal jury was instructed that the plaintiff was "entitled to be compensated for damages proximately caused by the defendant's conduct. The plaintiff

in this case seeks as damages the costs she will incur to replace the underground primary power line serving the house she bought from the defendants." The plaintiff did not object to this instruction. The jury awarded plaintiff $36,500 in compensatory damages and the judgment was subsequently satisfied in full.

The third criterion requires that the previous issue is the same as the one raised in the later action. The plaintiff argues that the damages she seeks in the instant action are different from those in the previous litigation. The Court does not agree. While the plaintiff may have brought different claims against these defendants than she did against the Gauthiers in the previous litigation, she is seeking to be made whole again through replacement of the power line—her damages are the same.

On the claims of negligence, breach of contract, and mis-indexing, the plaintiff seeks to recover the estimates from CVPS and Adams Electric to install a new electrical system and bury the line. Both of these estimates were presented to the federal jury. The plaintiff even recognizes that any damages she attempts to receive here must be offset by the $36,500 jury award.

While the plaintiff alternatively seeks to recover for the reduction in value of her property if the underground utility is not replaced, this claim makes little sense because she has *already* recovered damages to have the utility line replaced. The plaintiff also seeks landscaping expenses. She stated in her federal complaint that the CVPS and Adams Electric estimates did not include landscaping costs. Thus, in the previous litigation she recognized that landscaping costs would arise out of the replacement of the underground line. The plaintiff cannot withhold a portion of her damages for future

litigation against other defendants because this would be the definition of piecemeal litigation.

Finally, the plaintiff seeks to recover for possible business interruption arising out of the replacement of the line. This claim is speculative and not a valid claim for damages. See *Hedges v. Durrance*, 2003 VT 63, ¶ 12, 175 Vt. 588 ("An injury based on speculation about uncertain future events is no injury at all."). Furthermore, even if the plaintiff could recover for business interruption, these are damages which the she should have reasonably foreseen would arise out of replacement of the utility line; thus, it should have been argued in the previous litigation. Again, the allowance of such damages would encourage piecemeal litigation.

In regards to the fourth criterion, the plaintiff had a full and fair opportunity in United States District Court to litigate the issue of damages resulting from having to replace the underground power line. The plaintiff also had the opportunity to join the instant defendants in that action, but chose not to. "A plaintiff who could have joined [her] present adversary as a co-defendant in the first action is usually held precluded in the absence of strongly countervailing considerations. Since there are rarely tactical reasons for refraining from joining all potential defendants, the inference is that the second action is merely a renewal of a previously unsuccessful effort." Restatement (Second) Judgments § 29 cmt. e. The plaintiff even presented evidence at trial as to the Town of Benson's indexing, but did not join that defendant.

Furthermore, there was clearly an incentive to litigate in the previous litigation. This is not a case where a small squabble against one defendant results in greater unforeseen preclusionary consequences against other defendants in a later action. The

12

plaintiff made numerous claims against the Gauthiers, including the same claim for compensatory damages that she makes here.

Finally, applying preclusion in the later action is fair. The Court does not find persuasive Plaintiff's arguments that her federal case was a "last-minute attempt to salvage a case neglected by the plaintiff's first lawyer until trial was scheduled," or that she should have a chance to remedy what appeared to be a compromise verdict by the federal jury. The Second Circuit explicitly rejected Plaintiff's claim of a compromise verdict. Thus, there are no special circumstances which would make relitigation appropriate. The instant action appears to be nothing more than an attempt to recover greater damages from other defendants where the plaintiff is not pleased with her recovery in the previous litigation.

As Justice Traynor stated, "[i]t would be unjust to permit one who has had [her] day in court to reopen identical issues by merely switching adversaries." *Bernhard*, 122 P.2d at 895, quoted in *Trepanier*, 155 Vt. at 264-65. The plaintiff "had a full sized bite of the apple" in the first case, and the jury "conclusively adjudicated" the extent of her damages. See *Kathios*, 862 F.2d at 951. She has been made whole. Issue preclusion as to damages is appropriate.

### *III. Satisfaction of Judgment*

The doctrine of satisfaction of judgment is closely related to issue preclusion. In fact, courts have analyzed both doctrines when a plaintiff seeks to recover additional damages after a judgment in a previous case. See *Bridgestone/Firestone North America Tire, L.L.C.*, 79 P.3d 1209-1212 (analyzing both issue preclusion and satisfaction of judgment); see also *Greenleaf*, 174 F.3d at 357-61 (same).

13

The general rule is that the satisfaction of a judgment against one or more several joint tortfeasors is a discharge of them all, "since a party injured by a wrong committed by several can have but one satisfaction for his injury . . . ." *Coldwell v. Lang*, 105 Vt. 359, 363 (1933); see also *Greenleaf*, 174 F.3d at 357 (under Pennsylvania's "one satisfaction" rule, "although a plaintiff may obtain a judgment against several tort-feasors for the same harm, he or she is entitled to only one satisfaction for that harm," and is barred from seeking additional damages "where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim.") (citations omitted); *Velazquez v. Water Taxi, Inc.*, 403 N.E.2d 172, 173 (N.Y. 1980) ("It is well settled that the satisfaction of a judgment rendered against one tort-feasor discharges all joint tort-feasors from liability to the plaintiff."); Restatement (Second) of Judgments § 50 cmt. d ("[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible [sic] claim against any other obligor who is responsible for the same loss."); W. Keeton, et al., Prosser and Keeton on the Law of Torts § 48, at 331 (5th ed. 1984) ("When payment of the judgment in full is made by the judgment debtor, there is no doubt that the plaintiff is barred from further action against another who is liable for the same damages."); D. Dobbs, The Law of Torts § 388, at 1082 (2001) ("When a defendant fully pays a judgment for all of the plaintiff's damages, the plaintiff's claim is satisfied and [s]he has no further claim for the same injury.").

Here, the $36,500 judgment in the previous litigation was based on actual litigation of the measure of the loss. It was paid in full on April 16, 2009. Thus, the next question is whether the instant defendants were joint tortfeasors with the Gauthiers.

In Vermont, "whenever independent acts of several persons concur to produce single, indivisible injury that would not have occurred without such concurrence, each person is responsible for entire result and may be sued jointly and severally." *Montgomery v. Devoid*, 2006 VT 127, ¶ 33, 181 Vt. 154 (citing *Giguere v. Rosselot*, 110 Vt. 173, 181 (1939)). Here, the action of the Gauthiers in not informing the plaintiff of her ownership of the power line, the alleged negligence and breach of contract by Shoreham Telephone and Mr. Derrick in installing the line, and the alleged mis-indexing of the easement by the Town of Benson, all produced a single, indivisible injury—the cost of replacing the power line.

As discussed above, there is no uncompensated portion of damages for the plaintiff to pursue. The federal jury awarded her compensatory damages to replace the power line and made her whole again. Therefore, the satisfaction in full of the $36,500 judgment in the previous litigation eliminates any claim against the instant defendants for the same injuries. The defendants are entitled to judgment as a matter of law.

## ORDER

(1) Defendant Town of Benson's Motion for Summary Judgment, filed December 1, 2009, is GRANTED.

(2) Defendants Shoreham Telephone Co., Inc. and John Derrick's Motion for Summary Judgment, filed March 12, 2010, is GRANTED.


Dated at Rutland, Vermont this _____ day of _____, 2010.


_____
Hon. William Cohen
Superior Court Judge

15