*Stewart v. State*, No. 643-10-16 Wncv (Teachout, J., July 2, 2018)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 643-10-16 Wncv** |

**DEBRA STEWART**
    **Plaintiff**

    **v.**

**STATE OF VERMONT, et al.**
    **Defendants**

### DECISION
### The State's and Princeton's Motions for Summary Judgment

Plaintiff Debra Stewart sued the State for claims arising out of property damage and personal injuries allegedly caused by a foster child while in her care. In earlier decisions, the court ruled in the State Defendants' favor on all pending claims against them. Ms. Stewart then amended her complaint to add one claim of promissory estoppel against the State for property damage. The State has now filed a motion for summary judgment addressing that claim.

Defendant The Princeton Excess and Surplus Lines Insurance Company has filed a motion for summary judgment addressing the sole claim against it: that in adjusting and settling the insurance claim submitted to it, it violated Vermont's Consumer Protection Act, 9 V.S.A. §§ 2451–2481x (CPA).

Ms. Stewart asserts that, in seeking compensation for the alleged damages, a representative of the Department for Children and Families, Heather McLain, made representations to her to the effect that once Princeton adjusted and paid her claim, the State would pay whatever remained uncompensated. She asserts that based on that "promise" to pay uninsured losses, she settled her claim with Princeton, signing a broadly stated release. The State did not then pay all her uninsured losses.[1] In her remaining claims, she asserts that the State should be liable for all uninsured and uncompensated losses due to its promise to pay. She appears to believe that the Princeton insurance policy should have been interpreted to allow for multiple occurrences based on the nature of her claim. Princeton paid the claim, allowing one occurrence only (one "act" in the language of the policy). Her argument apparently is that if she had not been "misled" by the State, she would have held out for a more favorable adjustment of her claim by Princeton or otherwise not settled. The factual basis for a claim against Princeton for violation of the CPA remains unclear.

On summary judgment, the State argues as follows: (1) the limitations statute has run on the promissory estoppel claim; (2) the State made no representations affecting the number of

---

[1] It is unclear whether the State paid *some* of her uninsured losses. However, the issue does not affect this decision.

occurrences permitted by the Princeton policy; and (3) there was neither a promise nor reasonable and detrimental reliance on any promise made by the State. In its motion, Princeton argues as follows: (1) the release is enforceable and should be enforced; (2) a CPA claim cannot be brought against an insurer; (3) there is no allegation of any misrepresentation or unfair business practice by Princeton; (4) Ms. Stewart already recovered the policy limit for "one act" of property damage; and (5) there is no way to interpret the policy to apply to more than "one act" in the circumstances of this case.

### State's Motion and Promissory Estoppel

As a matter of law, the evidence is insufficient to support any finding of an actionable promise on the part of the State on which to predicate a promissory estoppel claim. "Establishment of promissory estoppel requires (1) a promise on which the promisor reasonably expects the promisee to take action or forbearance of a substantial character; (2) the promise induced a definite and substantial action or forbearance; and (3) injustice can be avoided only through the enforcement of the promise." *Green Mountain Inv. Corp. v. Flaim*, 174 Vt. 495, 497–98 (2002). "The promise must be more than 'a mere expression of intention, hope, desire, or opinion, which shows no real commitment.'" *Nelson v. Town of Johnsbury Selectboard*, 2015 VT 5, ¶ 56, 198 Vt. 277 (citation omitted). It must be "'of a specific and definite nature,' and not merely a 'vague assurance.' *Id*. (citations omitted). As was the case in *Woolaver v. State*, 2003 VT 71, ¶ 31, 175 Vt. 397, "[t]he weakness in plaintiff's promissory estoppel argument is that the alleged promises do not go far enough to extend to plaintiff the kind of protection she seeks."

The alleged promise in this case is that the State would reimburse any losses that were not compensated by Princeton under the applicable Foster Parents Liability policy. Plaintiff points to evidence of that promise principally in a statement made by Ms. McLain on e-mail (July 22, 2013), referring to the anticipated coverage available under the Princeton Policy and stating that, "the state would step in for the rest." The full sentence in which that fragment appears is: "The expectation is that the insurance company should pay out the full $20,000 and the state would step in for the rest." Ms. McLain explicitly was describing an expectation. She was not with any specificity or definiteness making a promise. Another communication on the same day clearly describes that the entire damages claim should be submitted to Princeton.

The fuller set of communications from Ms. McLain only reveals additional reasons to conclude as a matter of law that there was no actionable promise by Ms. McLain on behalf of the State. In her communication of August 7, 2013, she states, "As I stated on the phone, the insurance will only cover a portion of the total damage claim. For the rest of the claim we will be working with the State claims adjuster. I expect to hear back in the next two days about how that process works." In her communication of August 23, 2013, she states that once Princeton adjusts the claim, and only then, would the "State's risk management group" evaluate any otherwise uncompensated losses. "Once I get the determination from the insurance company I will send the documentation for the items that were not covered by insurance to the State claims adjuster for review. I am not aware of what that process entails, but will let you know more when I learn more about how that will play out." Plainly, Ms. McLain is not describing herself as the decisionmaker. She identifies the State claims adjuster as the true decisionmaker and offers that she does not know what process the State claims adjuster will undertake. No other

2

statements in the record indicate a promise to pay.

Ms. Stewart settled her claim with Princeton, and executed the release of all claims against it, on November 13, 2013, after the above statements.

Ms. McLain may have held a wrong belief about whether Ms. Stewart's uninsured losses would be compensated to some extent by the State, but she did not make, and Ms. Stewart could not reasonably have relied on, any promise to pay those losses that rose beyond a mere hope or expectation. This is insufficient as a matter of law to support a promissory estoppel claim.

Ms. Stewart's only meaningful argument in opposition to this conclusion is that this is a factual issue for the jury to determine. However, where the evidence could not reasonably support any finding of a promise, the court is able to rule as a matter of law on summary judgment. That is the case here.

Because this ruling disposes of Ms. Stewart's only remaining claim against the State, it is unnecessary to rule on the other arguments raised in support of the State's summary judgment motion.

*The release with Princeton and unfair business practices*

Ms. Stewart settled her claim with Princeton and executed a release barring any claims, including her CPA claim, against it. She does not argue that the CPA claim falls outside the scope of the release. She asserts in briefing, however, that the release should be set aside as unconscionable due to the unfair business practice that also serves as support for her CPA claim. The most clearly she asserts any unfair business practice is as follows:

> In this case Plaintiff has . . . alleged that "Defendants' conduct in handling Plaintiff's personal property claims constituted an unfair and deceptive business practice and is in violation of Vermont's Consumer Fraud Act, 9 V.S.A. § 2451 et seq." *This allegation of fraudulent conduct*, taken as true as this court must at this stage of the proceedings, is sufficient to sustain Plaintiff's continued case against Defendant Princeton since fraud, if proved, is grounds to avoid the effect of a general release.

Plaintiff's Opposition to Defendants Princeton's Motion for Summary Judgment 2 (filed April 30, 2018) (emphasis added). Ms. Stewart does not explain what the fraudulent conduct, or misrepresentations, are other than to say that she needs to conduct discovery to find out. See *id.* at 10; see also V.R.C.P. 11(b)(3) (factual representations to the court must have evidentiary support or there must be a good faith basis for believing that a reasonable investigation will reveal such evidence).

Ms. Stewart has come forward with no evidentiary basis for concluding that the release is unconscionable or that Princeton engaged in any fraudulent conduct or misrepresentations. The bare assertion of the expression "fraudulent conduct" is not evidence of fraudulent conduct. Summary judgment is predicated on evidence that must be in the record. V.R.C.P. 56(c). If a

3

party opposing summary judgment "cannot present facts essential to justify its opposition," it must file an affidavit explaining why so the court can determine how to proceed. V.R.C.P. 56(e). Ms. Stewart has filed no such affidavit nor offered any explanation for wholly lacking any evidence that might otherwise exist of fraudulent conduct by Princeton or for any reason to believe that such evidence exists to be found with more discovery. This is insufficient for summary judgment.

Princeton is entitled to summary judgment on the "fraudulent conduct" issue. Because this ruling disposes of Ms. Stewart's only claim against Princeton, it is unnecessary to rule on the other arguments raised in support of the Princeton's summary judgment motion.

ORDER

For the foregoing reasons, the State's and Princeton's motions for summary judgment are *granted*. Counsel for the State shall submit a form of proposed judgment.

Dated at Montpelier, Vermont this _____ day of June 2018.

_____
Mary Miles Teachout
Superior Judge