Filed 04/05/21

VERMONT SUPERIOR COURT
Bennington Unit
207 South St
Bennington VT  05201
802-447-2700
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 317-11-17 Bncv

Gates vs. Mack Molding Co., Inc.

## DECISION ON MOTION

This is a civil employment matter, pretrial.

Defendant Mack Molding Company, Inc. moved for summary judgment, contending that each of the eleven counts Plaintiff asserts in her complaint fail as a matter of law.

Plaintiff has filed a response, retracting all but three of her claims and opposing Defendant's motion for summary judgment on the remaining claims.

For the following reasons, Defendant's motion for summary judgment is GRANTED with respect to all counts.

### Undisputed Material Facts

The following facts are undisputed unless otherwise specified.[1]

Defendant Mack Molding Company, Inc. hired Plaintiff Angela M. Gates as a "Molder" on December 9, 1996.  Defendant's Statement of Undisputed Facts ("Def. SUF") ¶¶ 1–2.  The Plaintiff took a two-week family medical leave in 2013.  Def. SUF ¶ 5.

On or about May 18, 2015, Plaintiff reported to have injured her left knee outside of work.  Def. SUF ¶ 10.  Plaintiff subsequently took twelve continuous weeks of Family and Medical Leave Act ("FMLA") leave.  Def. SUF ¶ 14.[2]

Plaintiff returned to full-time employment in August 2015 after exhausting her FMLA/VPFLA leave.  Def. SUF ¶ 19.  Plaintiff left work approximately one hour into her August 26, 2015 shift—her third

---

[1] To avoid summary judgment, Plaintiff must point to admissible evidence that creates a genuine issue of material fact for dispute at trial.  V.R.C.P. 56(c).  While Plaintiff disputes a good number of Defendant's factual assertions, many of Plaintiff's disputed facts are immaterial, unsupported by admissible evidence, or otherwise insufficient to create a genuine issue of material fact for dispute at trial.  V.R.C.P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and the supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . .").  Defendant's factual assertions shall be considered undisputed unless specifically noted otherwise.

[2] Plaintiff disputes the FMLA/PFLA leave continuity, asserting that she only took 11.9 weeks of leave and therefore that she did not exhaust her leave in August of 2015.

shift since returning to full-time employment—reportedly due to pain in her left knee.  Def. SUF ¶¶ 22–23.[3]  Plaintiff did not work from her August 26, 2015 mid-shift departure until approximately October 2015, though she did receive short-term, non-FMLA/non-VPFLA short-term disability benefits during that time.  Def. SUF ¶ 27.  Plaintiff was aware during this period that she had exhausted her FMLA leave in August of 2015.  Def. SUF ¶ 28.[4]

Plaintiff's medical provider authorized light duty return to work for four hours a day without restriction, and Plaintiff returned to work on or about October 5, 2015 as a "Finisher."  Def. SUF ¶¶ 29–30.[5]  Plaintiff was subsequently cleared for full-time work and returned to full-time, unrestricted employment as a Finisher on November 12, 2015.  Def. SUF ¶ 32.

Plaintiff left work with knee pain on May 5, 2016.  Def. SUF ¶ 45; Pl. SMFD ¶ 45.[6]  Plaintiff sought medical treatment for her knee pain with another medical provider, Dr. Dwyer, on May 5, 2016.  Def. SUF ¶ 46.  In a medical note, Dr. Dwyer opined that Plaintiff could return to light duty with the following restrictions: "No prolonged standing, lifting, squatting, or twisting."  Def. SUF ¶ 46.  Dr. Dwyer's medical note contained no indication as to whether the restrictions were temporary or indefinite.  Def. SUF ¶ 47.

Defendant sent Plaintiff a letter dated May 11, 2016, informing her that she had exhausted her FMLA and VPFLA leave entitlements, and that she had not completed any paperwork for short-term disability or worker's compensation.  Def. SUF ¶ 56.  The letter also stated that an employee had communicated with Plaintiff and requested that Plaintiff complete paperwork.  Def. SUF ¶ 56.  The letter further advised that Defendant would consider Plaintiff's absence to be a "voluntary resignation" and terminate her position if it did not hear from her by May 16, 2016.   Def. SUF ¶ 56.

Plaintiff provided the Dr. Dwyer's medical note to her manager, Kevin Peets.  Def. SUF ¶ 48.  The medical note Plaintiff provided to Mr. Peets stated that Plaintiff was unable to perform the physical capabilities comprising the essential functions of her Finisher position.  Def. SUF ¶¶ 47–48. [7]  At the time Plaintiff provided the medical note to Mr. Peets, Plaintiff "only asked if she could solely trim rings."  Def. SUF ¶ 50.

The essential functions of the "Finisher" position include standing, lifting, squatting, and twisting.  Def. SUF ¶ 31.[8]  Plaintiff has admitted that, in her "Finisher" position, she was expected "to complete multiple tasks which included running machines for battery covers, chair, Bose speakers, and mopping."  Def. SUF ¶ 49.[9]  Trimming rings is merely a small portion of a Finisher's job responsibilities, and a Finisher who only trims rings is not performing the essential functions of a Finisher.  Def. SUF ¶ 53.[10]  As of May 16, 2016, neither Plaintiff nor her doctor provided any

---

[3] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶¶ 22–23.

[4] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 28.

[5] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶¶ 29–30.

[6] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 45.

[7] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶¶ 47–48.

[8] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 31.

[9] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 49.

[10] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 53.  The affidavit Plaintiff presents to displace her previous deposition testimony regarding the "Finisher" essential functions—see Def. SUF ¶ 31; Def. Exhibit A at 237—cannot create a genuine issue of material fact.  See *Travelers Ins. Companies v. Demarle, Inc., USA*, 2005 VT 53, ¶ 9, 178 Vt. 570 (quoting *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit

indication of when she would be able to return to work and perform the essential functions of the Finisher position—with or without accommodations. Def. SUF ¶ 61.[11]

Following receipt of the May 11, 2016 letter, Plaintiff completed an Incident Report for an injury allegedly recurring on August 25, 2015 at Defendant Mack Molding Company, Inc. on the "Press 30" machine. Def. SUF ¶ 57.[12]

Plaintiff had "no idea" if her termination was related to her completion of the Incident Report in 2016. Def. SUF ¶ 70.[13] On May 20, 2016, Defendant sent Plaintiff a letter informing her that her employment with Defendant as terminated effective May 20, 2016. Def. SUF ¶ 58.[14] Defendant's letter also requested that Plaintiff inform Defendant of her recovery and of any continuing interest in reinstatement with Defendant. Def. SUF ¶ 59.[15] At no point did Plaintiff inform Defendant of her recovery or interest in reinstatement. Def. SUF ¶ 60. Plaintiff admitted, in deposition, that she was unable to fully recover and perform the essential functions of her position until more than a year after her May 20, 2016 termination. Def. SUF ¶ 55.[16]

## Summary Judgment Standard

A party is entitled to summary judgment where that movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gauthier v. Keurig Green Mountain*, Inc., 2015 VT 108, ¶ 14, 200 Vt. 125 (quoting V.R.C.P. 56(a)) (internal quotations omitted).

In determining the existence of genuine issues of material fact, courts "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356. Courts construe "the facts presented in the light most favorable to the nonmoving party," *Vanderbloom v. State, Agency of Transp.,* 2015 VT 103, ¶ 5, 200 Vt. 150, such that "the nonmoving party receives the benefit of all reasonable doubts and inferences." *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 9; *Robertson*, 2004 VT 15, ¶ 15.

To survive a motion for summary judgment, the non-moving party must respond with specific facts to raise a triable issue and demonstrate sufficient admissible evidence to support a prima facie case. *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 79 (2002). A fact is material only if it might affect the outcome of the case. *O'Brien v. Synnott*, 2013 VT 33, ¶ 9, 193 Vt. 546. The non-moving

---

that merely contradicts, without explanation, previously given clear testimony.").

[11] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 61.

[12] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 57.

[13] Plaintiff disputes this fact, asserting that Plaintiff testified that her supervisors and a nurse "refused to listen to [plaintiff] when she said she had been hurt at work." Pl. SDMF ¶ 70. Plaintiff's assertions do not create the existence of a disputed material fact.

[14] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 58. Plaintiff's only asserted dispute at Pl. SMFD ¶ 58 is that the letter was postmarked May 24, 2016.

[15] Plaintiff's assertions do not create a genuine dispute. Defendant asserts that Plaintiff "never informed Mack Molding of her recovery or interest in reinstatement as directed in the May 20, 2016 letter." Def. SUF ¶ 60. In response, Plaintiff asserts that she informed Defendant of her interest in continuing work through by providing Dr. Dwyer's accommodation note to manager Kevin Peets. Pl. SDMF ¶ 60. This assertion does not create a genuine issue of material fact as to Defendant's assertion that "Plaintiff never informed Mack Molding of her recovery or interest in reinstatement as directed in the May 20, 2016 letter." Def. SUF ¶ 60.

[16] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 55.

party's opposition to summary judgment "may not rest upon the mere allegations or denials in its pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *White v. Quechee Lakes Landowners' Ass'n*, *Inc.*, 170 Vt. 25, 28 (1999) (internal quotations omitted).

A defendant is entitled to summary judgment where they can present at least one legally sufficient defense that would bar the plaintiff's claims. *Allstate Ins. Co. v. Vose*, 2004 VT 121, ¶ 13, 177 Vt. 412 (citing *Smith v. Day*, 148 Vt. 595, 597 (1987)).

## Analysis

Plaintiff's complaint originally asserted eleven claims against Defendant.[17]  Plaintiff has withdrawn eight of the original eleven counts.  The remaining three claims in Plaintiff's complaint are:

> Count Two: Retaliation for Exercising Medical Leave Rights under Vermont's Parental and Family Leave Act;
> Count Three: Disability Discrimination, Denial of Reasonable Accommodations, under the Vermont Fair Employment Practices Act; and
> Count Four: Retaliation for Filing Workers' Compensation Claim.

This decision will discuss each claim in sequence.

### Count Two: Retaliation for Exercising Medical Leave Rights under Vermont's Parental and Family Leave Act

Count Two of Plaintiff's complaint alleges retaliation for exercising medical leave rights under the Vermont Parental Family Leave Act ("VPFLA"), implicating 21 V.S.A. § 472(f) and 21 V.S.A. § 473. Defendant argues that summary judgment is proper on Count Two because Plaintiff is unable to prove (1) that her employer refused to reinstate her after the conclusion of a PFLA-protected leave, and (2) that her termination was related to the leave or condition for which the leave was granted.[18]

Plaintiff's arguments appear to comprise two distinct retaliation allegations.  Plaintiff's first allegation, a "failure to reinstate" assertion under 21 V.S.A. § 472(f), asserts that Defendant retaliated against Plaintiff following her August 24, 2015 return from PFLA leave by "failing to reinstate" Plaintiff as a

---

[17] Plaintiff's complaint initially asserted the following eleven claims: Count One: Interference with Medical Leave Rights under Vermont's PFLA; Count Two: Retaliation for Exercising Medical Leave Rights Under Vermont's PFLA; Count Three: Disability Discrimination (Discrimination and Denial of Reasonable Accommodations) Under FEPA; Count Four: Retaliation for Filing a Workers' Compensation Claim; Count Five: Age Discrimination; Count Six: Gender Discrimination (Disparate Treatment and Disparate Impact); Count Seven: Equal Pay Violation; Count Eight: Breach of Implied Employment and Covenant of Good Faith and Fair Dealing; Count Nine: Promissory Estoppel; Count Ten: Nonpayment of Wages- 21 V.S.A. § 342; and Count Eleven: Unjust Enrichment.

[18] The arguments Plaintiff offers in opposition to Defendant's motion for summary judgment on Count Two are often immaterial or difficult to follow.  Plaintiff argues that Defendant "denied her the medical leave rights to which she was entitled to by doing two things: 1) not reinstating her to her former molder position in October 2015, or even in December 2015 when there was an opening; and 2) deliberately and wrongly telling her that she did not have any medical leave left, when on the earliest date she could have received Mack's termination letter, i.e. May 25, 2016, her medical would have reloaded for 11.9 weeks."  Pl. Opp. at 8.  Plaintiff presents these arguments despite retracting her claim for "Interference with Medical Leave Rights under Vermont's Parental and Family Leave Act."  Plaintiff does not clearly explain why the alleged denial of medical leave rights should be now considered within the context of Count Two, rather than within the now retracted Count One.  Only the latter portion of Plaintiff's arguments are relevant to the PFLA claim she asserts in Count Two.

full-time Molder in October and December of 2015. Plaintiff's second allegation, a general retaliation claim under 21 V.S.A. § 473, asserts that Defendant retaliated against her for taking four hours of PFLA leave on May 6, 2016 by terminating her employment on May 20, 2016.

The general prohibition on retaliation under 21 V.S.A. § 473 provides that "[a]n employer shall not discharge or in any other manner retaliate against an employee who exercises or attempts to exercise his or her rights under this subchapter." 21 V.S.A. § 473. Defendant maintains that the general retaliation claims are assessed under the *McDonnell Douglas* standard applicable to the Vermont Fair Employment Practices Act. *Id.* ("The provisions against retaliation in subdivision 495(a)(8) of this title shall apply to this subchapter."). See also *Potenza v. City of New York*, 365 F.3d 165, 168 (2d. Cir. 2004) (in order to make a prima facie case in a similar FMLA retaliation claim, a plaintiff must establish that "(1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.").

Beyond this general prohibition against retaliation, the PFLA also contains specific provision governing an employer's failure to reinstate from PFLA leave. 21 V.S.A. § 472(f) ("Upon return from leave taken under this subchapter, an employee shall be offered the same or comparable job at the same level of compensation, employment benefits, seniority, or any other term or condition of the employment existing on the day leave began.").

In a claim alleging "failure to reinstate" under 21 V.S.A. § 472(f), Plaintiff must show: (1) that she was an "employee" as defined at 21 V.S.A. § 471(2), in that she was continuously employed by Defendant for one year for an average of at least 30 hours per week during the year; (2) that Defendant was an "employer" as defined at 21 V.S.A. § 471(1), in that Defendant had employed at least 15 individuals for an average of at least 30 hours per week during the year; (3) that Plaintiff took leave or exercised other rights protected by the VPFLA, after which Plaintiff's employer refused to reinstate Plaintiff after the conclusion of that VPFLA leave; (4) that Plaintiff, prior to requesting leave, neither provided nor received notice "that the employment would terminate" pursuant to 21 V.S.A. § 472(f); and (5) that Plaintiff "was terminated for reasons related to the leave or the condition for which the leave was granted, as prohibited by § 472(f)." *Woolaver v. State*, 2003 VT 71, ¶ 9, 175 Vt. 397. The VPFLA provides that "an employer has no obligation to reinstate an employee after the conclusion of parental or family leave where 'the employer can demonstrate by clear and convincing evidence that . . . 'during the period of leave the employee's job would have been terminated or the employee laid off for reasons unrelated to the leave or the condition for which the leave was granted . . . .'" *Woolaver*, 2003 VT 71, ¶ 8 (quoting 21 V.S.A. § 472(f)).

### 1. Retaliation: Failure to reinstate upon return from PFLA leave

Plaintiff argues that Defendant retaliated against Plaintiff by failing to reinstate Plaintiff as a full-time Molder following Plaintiff's October 5, 2015 return to work. Defendant argues that summary judgment on this count because the undisputed facts show that Plaintiff returned from PFLA leave on August 24, 2015—rather than October 5, 2015—and that Plaintiff's retaliation claim fails as a matter of law because the undisputed facts also show that Defendant reinstated Plaintiff as a full-time Molder when she returned from PFLA leave on August 24, 2015.

Under the PFLA, Defendant had a duty to reinstate Plaintiff in her position following her return from PFLA leave. 21 V.S.A. § 472(f). The undisputed facts show that Plaintiff returned from PFLA leave,

Order
317-11-17 Bncv Gates vs. Mack Molding Co., Inc.

Page **5** of **21**

having fully exhausted all 480 hours of available annual PFLA leave, and that Defendant did not deprive Plaintiff of her rights under the statute because Plaintiff returned to work as a full-time Molder on August 24, 2015. Plaintiff's claim fails as a matter of law because the undisputed facts show that Plaintiff returned from leave on August 24, 2015, and that Plaintiff was reinstated as a full-time "Molder" upon that return from leave. Plaintiff cannot show that Defendant "refused to reinstate Plaintiff after the conclusion of" Plaintiff's PFLA leave. *Woolaver*, 2003 VT 71, ¶ 9.

Plaintiff argues that Defendant retaliated by failing to reinstate Plaintiff because despite Plaintiff's initial return from PFLA leave to her full-time Molder position on August 24, 2015, Defendant "failed to reinstate" Plaintiff because she took an additional period of non-PFLA leave from August 26 through October 5, after which she returned and began working in a limited 4-hours-per-day capacity as a "Finisher."

The undisputed facts show that Plaintiff returned from PFLA leave on August 24, 2015 after having exhausted all 480 hours of available PFLA leave on August 10, 2015. Def. SUF ¶ 19, Def. Ex. H; Pl. SMFD ¶ 19.[19] It is also undisputed that Plaintiff left work approximately one hour into her third day of work following her return from leave, on August 26, 2015. Def. SUF. ¶ 23. Plaintiff did not work from the period following her August 26, 2015 departure until her return on October 5, 2015, although Plaintiff was on short term disability during this time. Def. SUF ¶ 27. While Plaintiff attempts to argue that she returned from PFLA leave on October 5, 2015, she has failed to present admissible evidence in support of this assertion. Plaintiff cannot make a prima facie showing that her October 5 return from her subsequent non-PFLA is the sort of "return from leave" contemplated under the statute.

Plaintiff, having exhausted her 480 hours of PFLA leave, and having subsequently returned from PFLA leave on August 24, 2015, could not have also returned from PFLA leave on October 5, 2015. Plaintiff, having exhausted PFLA leave on August 10, 2015, and having returned from PFLA leave on August 24, 2015, cannot subsequently take a period of non-PFLA leave and assert that her return from that non-PFLA leave was her "return from PFLA leave" for purposes of this failure to reinstate retaliation claim.

Plaintiff's October 5, 2015 return was a return from non-PFLA leave, as Plaintiff was returning from a leave of absence taken while receiving short-term disability benefits, Def. ¶ 27, and following that return Plaintiff could only work four hours per day without restriction following her October 5, 2015 return, Def. SUF ¶ 29, and Plaintiff did not return to full-time, unrestricted work until November 12, 2015, and which time Plaintiff resumed full-duty work a "Finisher" without restrictions. Def. SUF ¶ 32.

The undisputed facts show that Plaintiff returned from PFLA leave on August 24, 2015 was reinstated as a full-time molder before taking subsequent non-PFLA leave and returning in a partial limited capacity on October 5, 2015. Plaintiff therefore cannot make the required showing that she "took leave or exercised rights protected by the VPFLA, after which [her] employer refused to reinstate [her] after the conclusion of that VPFLA leave . . . ." *Woolaver*, 2003 VT 71, ¶ 9. Plaintiff cannot make a prima facie case of retaliation by failure to reinstate.

## 2. Retaliation: May 20, 2016 Termination

---

[19] Plaintiff has not presented admissible evidence to genuinely dispute Defendant's assertion at Def. SUF ¶ 19.

Plaintiff's second retaliation allegation asserts that Plaintiff's May 20, 2016 termination was a retaliatory discharge against Plaintiff for taking four hours of PFLA leave on May 6, 2016.

As a retaliation claim based on circumstantial evidence, this allegation is governed by the *McDonnell Douglas* standard in the present summary judgment determination. *See Cobb v. Dufresne-Henry, Inc.*, 603 F.Supp 1048, 1053 (1985) ("The Vermont statute is patterned on Title VII, and the legal analysis to be followed derives *from McDonnell Douglas Corporation v. Green . . . .*") (citing *State v. Whitingham School Board*, 138 Vt. 15, (1979)). Therefore, "the standards and burdens of proof under state law are identical to those existing under federal law." *Id.* To establish a 21 V.S.A. § 473 retaliation claim under Vermont's PFLA, Plaintiff must ultimately prove that (1) she engaged in activity protected by the Vermont PFLA, that (2) suffered an adverse employment action, and that (3) "there was a causal connection between the participation the protected activity and the [adverse employment action]." *Id.* at 1052–53.

### a. Prima Facie case

Plaintiff has the initial burden of make a prima facie case of retaliation by showing that (1) she engaged in activity protected by the Vermont PFLA, that (2) suffered an adverse employment action, and that (3) "there was a causal connection between the participation the protected activity and the [adverse employment action]." See *Cobb*, 603 at 1052–53 (applying *McDonnell Douglas* standard to Vermont Fair Employment Practices Act). See also *Gauthier*, 2015 VT 108, ¶ 16 ("In the absence of direct evidence of unlawful discharge or discrimination . . . [courts] apply the three-part burden-shifting framework as laid out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*.") (citation omitted from parenthetical).

The undisputed facts show that Plaintiff took all four of her remaining available PFLA leave hours on May 6, 2013, and that she was terminated on May 20, 2016.[20] Plaintiff has made a sufficient showing that she exercised rights under the PFLA, and that she suffered an "adverse employment decision"—two elements required for her prima facie retaliation claim. Plaintiff need only satisfy the causal connection element, by showing that she "was terminated for reasons related to the leave or the condition for which the leave was granted, as prohibited by [21 V.S.A.] § 472(f)." *Woolaver*, 2003 VT 71, ¶ 9.

The temporal proximity between the four hours of PFLA leave Plaintiff took on May 6, 2016 and her May 20, 2016 termination is sufficient for purposes of Plaintiff's required causation showing in her initial prima facie case.[21] *Cf. Gauthier*, 2015 VT 108, ¶ 19 (holding that three-month period between

---

[20] Defendant's method of PFLA calculation meant that Plaintiff's available VPFLA leave increased from zero hours to four hours following March 13, 2016. Plaintiff took those four hours of PFLA leave on May 6, 2016. This is consistent with the preceding conclusion that Plaintiff exhausted her PFLA leave on August 24, 2015 because Defendant calculates PFLA leave eligibility on a "rolling 12 month look back period for FMLA eligibility." Def. SUF ¶ 17. The implications of the "rolling" nature of the annual VPFLA leave allotment are depicted across the two absence logs detailing PFLA leave taken over two twelve-month periods. The first absence log, presented in Defendant's Exhibit H, shows 480 hours of VPFLA leave taken between March 13, 2015 and August 10, 2015. The second absence log, presented in Defendant's Exhibit S and Plaintiff's Exhibit 8, shows 480 hours of leave time between May 25, 2015 and May 6, 2016. The four PFLA hours Plaintiff took on May 6, 2016 were available because more than one year had passed since Plaintiff took four PFLA leave hours on March 13, 2015. This second absence log merely shows that Plaintiff took those four hours of PFLA that became available as of March 13, 2016.

[21] The parties dispute whether Plaintiff must make a showing of "but for" causation to make her initial prima facie case, or whether Plaintiff need only show that the PFLA leave was a "motiving factor" in Defendant's decision to terminate

"adverse-employment decision and the protected activity is sufficient under the [*McDonnell Douglas*] burden-shifting analysis," for purposes of prima facie showing in a similarly structured workers' compensation claim summary judgment analysis). Plaintiff has met her initial burden of making a prima facie case for retaliation. [22]

### b. Legitimate, nonretaliatory reason for termination

Once Plaintiff makes her initial prima case, the second step of the *McDonnell Douglas* framework shifts the burden of production to the Defendant, who must proffer a legitimate, nonretaliatory reason for Plaintiff's termination.

Defendant has met that burden. As Defendant explained in its Statement of Undisputed Material Facts,

> As of May 11, 2016, Plaintiff had exhausted all of her FMLA / VPFLA leave and she as unable to perform the essential function of her job according to her own physician's medical restrictions which provided no end date. Mack Molding's decision to terminate plaintiff was not based on discriminatory or retaliatory reasons. Plaintiff could not perform the job. Mack Molding could not continue to employee Plaintiff in a position she was not physically capable of performing.

Def. SUF ¶ 61; Def. Ex. B; Ex. A at 83–85; Def. Ex. C, ¶¶ 4-11; Def. Ex. N, ¶¶ 3, 11; Def. Ex. I, at 6–7. Defendant's proffered explanation is evident from the undisputed material facts. First, the undisputed material facts show that Plaintiff had no remaining PFLA leave. Plaintiff took four hours of available PFLA leave on May 6, 2016. Def. Ex. H; Def. Ex. S; Pl. SMFD ¶ 28; Pl. Ex. 8. At that time, Plaintiff had again exhausted all of the PFLA hours available to her pursuant to 21 V.S.A. § 472(a)(2). *Id*.

Second, the undisputed material facts show that Plaintiff was unable to perform the essential functions of her position. Plaintiff left work on May 5, 2015 due to knee pain. Def. SUF ¶ 45.[23] That same day, Plaintiff sought medical treatment for her knee pain with another medical provider, Dr. Dwyer, on May 5, 2016. Def. SUF ¶ 46. In a medical note, Dr. Dwyer opined that Plaintiff could return to light duty with the following restrictions: "No prolonged standing, lifting, squatting, or twisting." Def. SUF ¶ 46. Plaintiff provided the Dr. Dwyer's medical note to her manager, Kevin Peets. Def. SUF ¶ 48. The

---

Plaintiff. Plaintiff's burden under either standard is "a relatively light one," *Whitingham School Bd.*, 138 Vt. at 19, and Plaintiff need only show that requiring only that Plaintiff must show that she suffered an adverse employment "under circumstances which give rise to inference of" retaliation in order to meet her initial burden of making out a prima facie case of retaliation. *See Hogdgon v. Mt. Mansfield Co., Inc.*, 160 Vt. 150 (1992) (in action similarly assessed Vermont Fair Employment Practices Act, discussing causation element of Plaintiff's initial summary judgment burden at to make a prima facie case). As resolving this dispute is not necessary to the outcome of this summary judgment decision, it suffices to say that Plaintiff's temporal proximity standard is sufficient under either iteration of the causation element of Plaintiff's prima facie case.

[22] Defendant maintains that Plaintiff cannot make out a prima facie case because "[t]here is no basis for concluding that Plaintiff's termination on May 20, 2016 was for reasons related to her medical leave which was exhausted many months prior, or to any condition for which leave was granted." Def's Rpl. at 6. While this may be true with respect to Plaintiff's May 2015 through August 2015 PFLA leave, Defendant's argument does not address Plaintiff's allegations of retaliation for taking four hours of PFLA leave on May 6, 2016.

[23] Plaintiff has failed to present admissible evidence to genuinely dispute this fact.

medical note Plaintiff provided to Mr. Peets demonstrated that Plaintiff was unable to perform the physical capabilities comprising the essential functions of her Finisher position.  Def. SUF ¶¶ 47–48.[24]

At the time she provided the medical note to Mr. Peets, Plaintiff "only asked if she could solely trim rings."  Def. SUF ¶ 50.  Plaintiff has admitted that, in her "Finisher" position, she was expected "to complete multiple tasks which included running machines for battery covers, chair, Bose speakers, and mopping."  Def. SUF ¶ 49.[25] Trimming rings is merely a small portion of a Finisher's job responsibilities, and a Finisher who only trims rings is not performing the essential functions of a Finisher.  Def. SUF ¶ 53.[26]

Lastly, there is no genuine dispute that Dr. Dwyer's medical note contained no indication as to whether the restrictions were temporary or indefinite.  Def. SUF ¶ 47.

Defendant has met its burden of proffering legitimate, nonretaliatory reason for its decision to terminate Plaintiff.

### c. Pretext

The third step of the *McDonnell Douglas* framework shifts the burden back to Plaintiff, who must present admissible evidence showing that Defendant's proffered legitimate, nonretaliatory reason for Plaintiff's termination was merely pretextual.  *Cf. Graziadio v. Culinary Institute of America¸* 817 F.3d 415, 429 (2d Cir. 2016) (In an analogous claim for retaliation under the FMLA, explaining that once defendant demonstrates a legitimate, nondiscriminatory reason for the adverse employment action, "the plaintiff must then show that defendant's proffered reason is pretextual.") (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996)).

To show pretext at the summary judgment stage, a Plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1274 (11th Cir. 2017) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)).

Plaintiff may attempt to show pretext by demonstrating "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's preferred legitimate, nonretaliatory reasons for its actions," from which a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."

---

[24] Defendant asserts that "Based on Dr. Dwyer's medical opinion and note that Plaintiff provided to her manager, Kevin Peets, Plaintiff admitted that she could not perform the essential functions of the Finisher position."  Def. SUF ¶ 48 (citing Def. Ex. A at 96; Def. Ex. F at 46–47, 126–27, 143).  Plaintiff disputes this assertion, writing, "Disputed.  Kevin Peets admits that [Plaintiff] gave him Dr. Dwyer's note with restrictions and he "considered" it a nonwork-related injury and told her to leave.  See Kevin Peets' Memo, dated 5/6/16, Ex. 15.  He said it was Mack's policy not to all [sic] employees injured outside of work to return until they were 100%. *Id.*"  Plaintiff's assertion at Pl. SMFD ¶ 48 does not appear to materially dispute Defendant's assertion at Def. SUF ¶¶ 47–48.

[25] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 49.

[26] Plaintiff disputes this fact, but her assertion does not materially alter the fact asserted at Def. SUF ¶ 53.  The affidavit Plaintiff presents to displace her previous deposition testimony regarding the "Finisher" essential functions—see Def. SUF ¶ 3; Def. Exhibit A at 237—cannot create a genuine issue of material fact.  See *Travelers Ins. Co.*, 2005 VT 53, ¶ 9 (quoting *Van T. Junkins & Assocs.*, 736 F.2d at 657 ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

*Graziadio*, 817 F.3d at 429 (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).[27] Close temporal proximity between the protected PFLA leave and termination may also evidence pretext, when considered together with corroborating circumstantial evidence. *Cf. Graziadio*, 817 F.3d at 431 (concluding that "weakness of the evidence supporting the defendant's explanation, considered in conjunction with the very close temporal proximity between [Plaintiff's] leave and her termination, would then permit the conclusion that defendants' decision to fire [Plaintiff] arose not from her "abandonment" of her position but from her much-contested attempt to take FMLA leave.").

Evidence supporting Plaintiff's prima facie case is often relevant to Plaintiff's subsequent burden to show pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000). Of course, Plaintiff may present additional circumstantial evidence that would permit a trier of fact to find that Defendant's reason was pretextual.

*Weaknesses, implausibility, inconsistencies, or contradictions*

Plaintiff presents several arguments to establish weaknesses, implausibility, inconsistencies, or contradictions in Defendant's reasons for Plaintiff's termination.

Defendant first stated that it terminated Plaintiff because she could no longer perform the essential functions of her position. Def. SUF ¶ 61[28] Plaintiff argues that this reason conflicts with a second reason offered in the May 20, 2016 letter—that "due to production schedules," it was "necessary to assign another employee to [Plaintiff's] position." Pl. Sur-Reply at 14, citing Pl. SMFD ¶ 14B. Finally, Plaintiff raises a third example of what she maintains an inconsistent explanation of Defendant's decision to terminate, arguing that on an unemployment form, Patty Plesko said that Plaintiff voluntarily left her position with Defendant because of "medical reasons" and "family leave," [Plaintiff] voluntarily left her job at [Defendant] because of "medical reasons" and "family leave." However, Plaintiff notes that the form did not display a checked box indicating that Plaintiff had been fired.

Plaintiff's arguments and supporting admissible evidence are insufficient to permit a reasonable trier of fact to conclude that Defendant's reasons are pretextual. Plaintiff's admissible evidence, considered in the light most favorable to Plaintiff, could not permit a reasonable juror to conclude that a Plaintiff's arguments establish "weaknesses, implausibility's, inconsistencies, or contradictions" that would tend to demonstrate pretext.

Defendant's first reason is not inconsistent with its second explanation that it was "necessarily to assign another employee to [Plaintiff's] position." Pl. Sur-Reply at 14. This second explanation is a consequence of the first. Plaintiff could not perform—and thus, was not performing—the essential functions of the "Finisher" position. Defendant's explanation in the May 20, 2016 letter clarified that

---

[27] See also *Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive . . . [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.")

[28] Although Plaintiff disputes this assertion in her Statement of Material Facts in Dispute, Plaintiff has not presented admissible and material evidence that would create a genuine dispute of fact with respect Def. SUF ¶ 61. For example, Plaintiff asserts that she "could have performed the finishing job on light-duty trimming rings etc." Pl. SMFD ¶ 61 (citing Pl. Ex. 21 at 36:11; Pl. Ex. 11 at 34:16–18; Pl. Ex. 35:3–12). Plaintiff's argument does not present a genuine dispute of fact over whether Plaintiff was unable to fulfill the essential functions of the "Finisher" position.

its production schedule required Defendant to assign another employee to take over the essential "Finisher" function that Plaintiff could not meet. A reasonable juror could not conclude that these two reasons provide an inconsistent explanation.

Plaintiff argues that Defendant's third explanation—consisting of Defendant's response to a "reason for separation" prompt on an unemployment form—also conflicts with Defendant's two preceding reasons for termination. Plaintiff argues that this third reason is inconsistent because while the form indicates that Plaintiff voluntarily left her job with Defendant due to "a medical reason" and "family leave," the form did not display a checked box next to the option indicating that Plaintiff was fired. Pl. Ex. 37.

Closer examination of the unemployed form illustrates why this response is not inconsistent with the first two reasons Defendant provided for Plaintiff's termination. As Plaintiff asserted, the "Reason for separation" prompt, item number five on Pl. Ex. 37, at 1, Defendant (via Patty Plesko, Defendant's Human Resources Manager) reflects two boxes that were selected: a box stating, "Family Leave" and a box labeled "Voluntary Quit or Medical Reason or Voluntary Retirement." The second checked box clearly encompasses one of three reasons: (1) Voluntary Quit, (2) Medical Reason, or (3) Voluntary Retirement. Pl. Ex. 37, at 1. The form clearly shows that "Medical Reason" is underlined for the second checked box.

The undisputed facts demonstrate that the separation was due to medical reasons, in that Plaintiff's medical condition was the precipitating factor that rendered her incapable of fulfilling the essential functions of the "Finisher" position, and that ultimately led Defendant to assign another employee to the "Finisher" role and terminate Plaintiff's position in order to meet the needs of its production schedule. A "medical reason" was the root cause of the Plaintiff's inability to fulfill the essential functions of the "Finisher" role, and that inability to fulfill the essential functions of the "Finisher" role led to Plaintiff's termination on May 20, 2016. No reasonable juror could find that this third "reason" evidenced in the unemployment form establishes weaknesses, implausibility, inconsistencies, or contradictions with Defendant's "other" reasons that together demonstrates pretext.

To show that an employer's reasons are weak, implausible, inconsistent, or self-contradicting, Plaintiff must do more than merely show that Defendant has provided several distinct reasons for terminating Plaintiff. Plaintiff must show that the differing reasons could permit a reasonable trier of fact to find that the inconsistencies within the employer's offered explanations and reasons for termination are "unworthy of credence." See *Reeves*, 530 U.S. at 144; *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). To show inconsistency, Plaintiff must show that the explanations and reasons lack agreement or are incompatible. INCONSISTENT, Black's Law Dictionary (11th ed. 2019) (defining "inconsistent" to mean "Lacking agreement among parts; not compatible with another fact or claim"). Without an adequate demonstration of inconsistency, merely showing that an employer gave separate reasons and explanations for its decision to terminate an employee is insufficient to permit a trier of fact to conclude that the employer's explanations and reasons are unworthy of credence.

Plaintiff has not presented admissible evidence showing weaknesses, implausibility, inconsistencies, or contradictions in Defendant's reasons for terminating Plaintiff that would permit a trier of fact to conclude that Defendant's reasons were pretextual.

*Temporal proximity*

Plaintiff also argues that a reasonable juror could conclude that the close temporal proximity between her four hours of PFLA leave and her termination demonstrates pretext.[29]

While temporal proximity is often sufficient for the causation element of Plaintiff's initial prima facie showing, the factor does not hold the same weight for Plaintiff's subsequent to demonstrate pretext. As the 11th Circuit explained, while "[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection . . . temporal proximity, without more, must be very close in order to satisfy the causation requirement." *Jones*, 854 F.3d at 1271–72 (internal quotations and citations omitted). Measuring the temporal proximity from the Plaintiff's last day of FMLA leave, the 11th Circuit concluded that held that the close temporal connection between Plaintiff's last day of FMLA leave and the time of the adverse employment action an approximately one-month period) was sufficient for Plaintiff to raise a genuine dispute of material fact "as to whether his taking of FMLA leave and his termination were causally related." *Id.* at 1273.

The *Jones* decision is distinguishable from the present case for two reasons. First, the Plaintiff in *Jones*—an Activities Director for a long-term-care nursing facility—returned from FMLA leave, only to be terminated approximately one month later. The surrounding facts distinguish *Jones* from the present case because in the present case, Plaintiff did not return to work after taking the four hours of PFLA leave.

Second, while the *Jones* Plaintiff presented additional evidence to corroborate the dispute raised by the temporal connection between the last day of FMLA leave and Plaintiff's termination, Plaintiff has failed to do so. Although Plaintiff has attempted to likewise present additional circumstantial evidence to corroborate her assertion that the temporal proximity is demonstrative of pretext, Plaintiff has not succeeded in this endeavor.

*Jones* does not demonstrate that a one-month temporal connection between the protected rights and the adverse employment decision is evidence of pretext *per se*. To the contrary, the 11th Circuit went so far as to note that "close temporal proximity to an employee's protected FMLA activity and his termination is evidence of pretext, though probably insufficient to establish pretext by itself." *Jones*, 854 F.3d at 1275–76 (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 198 (11th Cir. 2006)). Additionally, in contrast with the *Jones* Plaintiff, the Plaintiff in this case did not return the protected leave after exhausting available PFLA leave on May 6, 2016. *Jones* involved remarkably distinct circumstances from those alleged in the present case.

Although there is no dispute that there was a close temporal proximity between the four hours of PFLA leave Plaintiff took on May 6, 2016 and Defendant's May 20, 2016 termination letter, that temporal proximity cannot permit a reasonable fact finder to believe that Defendant's reasons were pretextual, and that Plaintiff's leave was—as Plaintiff claim—"at least a motivating factor in Defendant's decision to terminate Plaintiff."

*Circumstantial evidence of pretext*

---

[29] Plaintiff cites the 11th Circuit decision *Jones v. Gulf Coast Health Care of Del.*, wherein the court held that a one-month period between returning from FMAL leave and termination supported pretext. The *Jones* Plaintiff brought a claim against his employer for interference with FMLA rights and retaliation, arguing that his employer refused to allow his return to work with certain physical limitations. *Jones*, 854 F.3d at 1267.

In addition to the preceding arguments, Plaintiff presents circumstantial evidence, arguing: (1) that a jury could find retaliatory animus from Defendant's "waiting to mail [Plaintiff's] termination letter on the day right before her leave would reload," Pl. Sur-Reply at 13; (2) that a reasonable jury could conclude that Defendant's explanation was pretextual because Plaintiff has been employed with Defendant for 19.5 years at the time of her termination, and because that termination prevented Plaintiff from staying on a leave of absence she was on as of May 12, 2016, "just another 12 days until her leave would have reloaded on May 25, 2016." Pl. Sur-Reply 13; and (3) that Defendant's act of not reinstating into her position by giving her light duty was retaliation that would permit a reasonable jury to find pretext.

The circumstantial evidence Plaintiff presents, even if admissible and undisputed, would not be sufficient for a reasonable juror to conclude that Defendant's proffered legitimate, nondiscriminatory explanation was pretextual.

It is difficult to ascertain how Plaintiff's first argument could evidence pretext. Plaintiff does not argue any basis for which the May 24, 2016 postmark date is pretextual, or even material. Plaintiff's argument apparently proceeds on the conclusory presumption a differential between the date Plaintiff's termination was effective and the letter's postmark date is per se evidence of pretext. Plaintiff offers no further support for this argument.

Plaintiff's second argument apparently argues that a trier of fact could find that Defendant's proffered reason for terminating Plaintiff was pretextual because Defendant effectively prevented Plaintiff from staying on the leave of absence she was on for "just another 12 days until her leave would have reloaded on May 25, 2016," at which point she would be able to exercise an additional 11.9 weeks of PFLA leave.[30]

As Plaintiff provides no evidence to show that Defendant had any obligation to keep Plaintiff on a non-PFLA leave until the May 25, 2016 date, Plaintiff's argument apparently assumes the premise that Defendant's failure to grant a discretionary, non-PFLA leave evidences pretext. This argument is also unpersuasive.

Finally, Plaintiff's third argument supposes that a reasonable jury could find that Defendant's denial of her request for light duty demonstrates that Defendant's stated reasons for terminating Plaintiff were pretextual.

Plaintiff's argument reasons that Defendant "provided light duty to employees with work injuries" like Plaintiff's, but that "her supervisor Kevin Peets, summarily denied her request and the fact that she had a work injury without any evidence or discussion with her." Pl. Sur-Reply at 13.

Plaintiff's argument, even if undisputed and supported by admissible evidence, cannot permit a trier of fact to find pretext. Plaintiff appears to argue that this response was a deviation from the employer's ordinary policy, and that this deviation evidences pretext. See *Mellin v. Flood Brook Union School*

---

[30] Plaintiff's "reloading argument" supposes that Plaintiff could take an additional 11.9 weeks of PFLA leave starting May 25, 2016. Though ultimately insufficient for any trier of fact to recognize pretext, Plaintiff's theory is not unfounded. Plaintiff reasons that each day following May 25, 2016 would mark the passage of 12 months from the time she took that corresponding PFLA leave during the period of May 25, 2015 through August 10, 2015, and thus Plaintiff would ostensibly earn back and subsequently use 8 hours of PFLA leave each day. As consequence, Plaintiff would enjoy the benefit of a cycle in which Plaintiff's available PFLA leave bank oscillated between 0 hours and 8 hours of PFLA leave each day.

*Dist.*, 173 Vt. 202, 212 (2001) ("[A]n employer's response to an unemployment situation that is from [sic] response in employer's ordinary policy is evidence of pretext in retaliation cases.") (internal citation omitted).

The policy Plaintiff appears to reference provides that Defendant "may provide, when available transitional duty assignments (i.e. light duty) for employees who receiving worker's compensation benefits and who are able to work, but not able to perform the essential functions of their position." Pl. Sur-Reply at 18 (citing Pl. Ex. 38 at 10-2). However, as Plaintiff was not receiving worker's compensation benefits at that time she alleged Defendant denied her light duty, Plaintiff has not demonstrated that any alleged denial of light duty was even a deviation of policy—not to say a deviation of policy that a trier of fact could find demonstrates pretext.

Plaintiff has failed to present admissible evidence to demonstrate pretext. After considering individually and aggregately, in the light most favorable to Plaintiff, and affording Plaintiff all reasonable inferences, these arguments could not permit a reasonable trier of fact to conclude that Defendant's proffered reason for Plaintiff's termination was pretextual.

Plaintiff has not met her burden of presenting admissible evidence that would permit a trier of fact to find that Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual. As Plaintiff has failed this burden, Defendant's motion for summary judgment is GRANTED with respect to Count Two.

### Count Three: Disability Discrimination, Denial of Reasonable Accommodations, under the Vermont Fair Employment Practices Act

To establish a claim for disability discrimination under the Vermont Fair Employment Practices Act, Plaintiff must show that she was a "qualified individual with a disability," 21 V.S.A. § 495(a)(1), and that she was discharged because of that disability. *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995). When Plaintiff has made out her prima facie case, "the burden shifts to the employer to show that no reasonable accommodation is possible . . . [who must ultimately] prove an inability to accommodate because the accommodations would substantially alter the nature of the job or would be unduly burdensome." *Id.* at 181–82.

Ultimately, summary judgment is appropriate if "there no genuine issues of material fact suggesting that [Plaintiff] was capable of performing the essential functions of a [Finisher] with or without reasonable accommodation." *Id.* at 182. See *Wynne v. Tufts University School of Medicine*, 932 F.2d 19, 26 (1st Cir. 1991).

*Qualified individual with a disability*

A "qualified individual with a disability" is a person "with a disability who is capable of performing the essential functions of the job . . . with reasonable accommodations to the disability." 21 V.S.A. § 495d(6). Plaintiff bears the burden of proving "what constitutes the essential functions of the job and what constitutes reasonable accommodation." *G.S. Blodgett Co.*, 163 Vt. at 180 (citing *Packard v. Gordon,* 148 Vt. 579, 583 (1987)).

Plaintiff's initial burden to demonstrate that she was a qualified individual by "demonstrating the ability to perform the essential functions of the job with reasonable accommodation is not a heavy

burden. It is sufficient for Plaintiff[ ] to present evidence as to [her] individual capabilities to perform the job in question and suggestions for some reasonable assistance of job modification by the employer." *G.S. Blodgett Co.*, 163 Vt. at 182 (citing *Frank*, 949 F.2d at 640)

To survive a motion for summary judgment, Plaintiff must "present evidence that a reasonable accommodation is possible." *Id.* at 181 (citing *Arneson v. Heckler*, 879 F.2d 393, 396 (8th Cir. 1989)) (emphasis omitted). An "accommodation is unreasonable if it would necessitate modification of or elimination of the essential nature of the job." *Id.* at 183 (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991)).

The essential functions of the "Finisher" position include standing, lifting, squatting, and twisting. Def. SUF ¶ 31. The undisputed facts show that Plaintiff could not perform these duties as of May 2016. Def. SUF ¶¶ 46–47; ¶ 61. Plaintiff suggested accommodation by performing the function of "trimming rings." Def. SUF ¶ 50. However, such an accommodation would substantially alter or eliminate the essential nature of the position of "Finisher" because "trimming rings" is just one of several job responsibilities of the "Finisher" position. Def. SUF ¶ 31. Plaintiff would be unable to perform the position's other essential functions if her responsibilities were limited to merely "trimming rings." Def. SUF ¶¶ 46–47; ¶ 61.

As a person performing the sole task of "trimming rings" is not performing the equivalency of the essential functions of a "Finisher," Plaintiff's accommodation request was not possible because it would necessitate modification or elimination of the essential nature of the job. *Gilbert*, 949 F.2d at 642. Plaintiff has not met her burden of making a prima facie case by showing that she is a qualified individual with an individual, as required pursuant to 21 V.S.A. § 495d(6).[31]

Plaintiff raises several additional arguments in support of her argument that light duty assignment trimming rings was a reasonable accommodation for her "Finisher" position. These arguments are not persuasive and neither individually nor collectively provide grounds to conclude that Plaintiff can make out a prima facie case by showing that was a qualified individual with a disability as required under 21 V.S.A. § 495d(6).

*Light duty as accommodation*

Plaintiff argues that she was capable of receiving an accommodation because she was physically able to do light duty on May 6, 2016. While Plaintiff's arguments may have created a genuine dispute as to whether Plaintiff was capable of performing light duty on May 6, 2016, her arguments do not address the material issue of whether the light duty Plaintiff sought was a reasonable accommodation that enabled her to perform the essential functions of the position.

Defendant argues that Plaintiff failed to cite record evidence to support her assertion that she " . . . was able to perform the essential functions of her job, such as trimming rings etc. with accommodations or light duty." Def. Rpl. at 7. In response, Plaintiff argues that she was physically able to work, light

---

[31] The affidavit Plaintiff presents to displace her previous deposition testimony regarding the "Finisher" essential functions, Def. ¶ 3; Def. Exhibit A at 237, cannot create a genuine issue of material fact. *See Travelers Ins. Co.*, 2005 VT 53, ¶ 9, 178 Vt. 570 (quoting *Van T. Junkins & Assocs.*, 736 F.2d at 657) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

duty on May 6, 2016, and that could have accommodated Plaintiff's restrictions with their light duty assignments.  Pl. Sur-Reply at 16–17.

Plaintiff's arguments, while not entirely clear, do not appear to address the material issue of whether Plaintiff could perform the essential functions of the "Finisher" position with light duty or accommodations.  For example, Plaintiff's Affidavit states that "[a]pproximately 50% of the jobs in finishing can be performed sitting down, such as inserting items, working at the testing station, and masking items to get them ready to be painted."  Pl. Ex. 22 at ¶ 28.  Aside from the potential issues raised by Plaintiff's use of a recent affidavit to displace prior deposition testimony regarding the "Finisher" essential functions, see *supra* at 3, n.10, Plaintiff's assertion that she could perform approximately 50% of the jobs in Finishing sitting down is not tantamount to asserting that she could perform the essential functions of her "Finisher" position.

As Plaintiff's light duty proposal did not meet the essential functions of the "Finisher" position, Plaintiff was effectively asking Defendant to create a new position for her.  The VFEPA does not contemplate such a result.  See 21 V.S.A. § 495d(12); *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, (1987) (employer not required to find another job for employee who is not qualified for job she was doing); *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir. 1991) (no duty to create new part-time position); *G.S. Blodgett Co.*, 163 Vt. at 184 (The VFEPA reasonable accommodation requirement does not contemplate the creation of a new position as a result of that requirement.).[32]

The relevant inquiry for Plaintiff's Count Three disability discrimination claim is whether Plaintiff is "capable of performing the essential functions of the job . . . with reasonable accommodations to the disability."  21 V.S.A. § 495d(6); *G.S. Blodgett Co.*, 163 Vt. at 180.  Contrary to Plaintiff's apparent suggestions, the relevant inquiry *is* not whether Defendant could have accommodated Plaintiff by providing light duty, irrespective of whether that light duty would enable Plaintiff to fulfill the essential functions of the "Finisher" position.  Plaintiff's arguments that Defendant could have assigned her light duty deviate too far from the material issue under consideration in this summary judgment determination.[33]

Plaintiff has not made a prima facie case that she may be considered a "qualified individual" for purposes of her disability discrimination claim because she has not demonstrated how Defendant's discretion to give light duty to employees who receive worker's compensation benefits and who are able to work, but not able to perform the essential functions of their position demonstrates means that Plaintiff—an employee who was not receiving worker's compensation—could also receive light duty as a reasonable accommodation.  In any case, the "light duty" Plaintiff describes would constitute a

---

[32] Plaintiff proceeds by invoking persuasive authority from the Seventh Circuit decision *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) to illustrate that although employers are not required to create light duty positions for non-occupationally injured employees, "if an employee has a policy of creating light-duty positions for employees who are occupationally injured, then that same benefit ordinarily must be extended to an employee with a disability who is not occupationally injured unless the company can show undue hardship." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017).  Citing *Norville v. Staten Island Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999), Plaintiff additionally argues that reassignment to an existing, vacant position is a possible reasonable accommodation."

[33] Plaintiff writes, "In their Reply at p. 7 Mack argues that Angie has not cited facts that shows trimming rings would have been fulfilling the essential functions of her job.  However, they don't dispute in their motion or their reply that Mack had light duty jobs, such as trimming rings.  While Angie still maintains her just trimming rings would have fulfilled the essential functions of her job, this debate is rendered moot when it is undisputed that Mack could have given her light duty, which is not based on whether an employee can perform the essential functions of their regular job." Pl. Sur-Reply at 17–18.  The proper meaning of "reasonable accommodation" within the context of this disability discrimination claim is key to this issue.

modification or elimination of the essential nature of the job, and that light duty is thus not a reasonable accommodation. *G.S. Blodgett Co.*, 163 Vt. at 181.

There are no disputed material facts here, and the undisputed facts demonstrate Plaintiff cannot demonstrate that she was qualified individual with a disability as defined under the VFEPA. Plaintiff has failed to meet her burden of making a prima facie case because Plaintiff has not presented admissible evidence sufficient for a trier of fact to conclude that a "reasonable accommodation" was possible.

Plaintiff's remaining arguments similarly fall short of creating a genuine issue of material fact regarding whether a reasonable accommodation is possible. As Plaintiff cannot make out a prima facie case for disability discrimination, summary judgment is proper. Defendant's motion for summary judgment is GRANTED with respect to Count Three.

### Count Four: Retaliation for Filing Workers' Compensation Claim

To establish a prima facie claim for retaliation for filing a worker's compensation claim, Plaintiff must show: (1) that she engaged in activity protected under the Workers' Compensation Act, such as filing a benefit claim; (2) that Defendant was aware that she engaged in that protected activity; (3) that she suffered an adverse employment action or decision; and (4) that there was a causal connection between the protected activity and the adverse action or decision. *Gauthier*, 2015 VT 108, ¶ 16; *Murray v. St. Michael's College*, 164 Vt. 205, 210 (1995).

After a plaintiff makes this prima facie case, the burden then shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Murray*, 164 Vt. at 210. The burden then shifts once again back to the plaintiff, who must prove that the Defendant's articulated reason was merely a pretext. *Id.* (citing *Sprague v. University of Vermont*, 661 F.Supp 1132, 1140 (D. Vt. 1987)).

### 1. Prima facie case

Defendant asserts that a grant of summary judgment is proper because Plaintiff has not presented any issue of material disputed fact capable of defeating summary judgment in her workers' compensation retaliation. Def. Rpl. at 15.

As with the preceding claims, Defendant primarily argues that summary judgment on Count 4 because Plaintiff has failed to meet her initial burden of making a *prima facie* showing that there was a connection between the protected activity and the adverse action or decision—here, between Plaintiff's act of filing a worker's compensation claim and her May 20, 2016 termination by Plaintiff. Defendant argues that Plaintiff lacks *any* evidence that Defendant retaliated against Plaintiff. Def. MSJ at 22–23; Def. Rpl. at 15–16.

Plaintiff argues that she has made the requisite causal showing sufficient to make out a prima facie case of retaliation for filing a worker's compensation claim. Plaintiff specifically invokes the Vermont Supreme Court's reasoning in *Gauthier*, 2015 VT 108, ¶ 19. Indeed, as discussed earlier in this decision, the Vermont Supreme Court has held that a temporal proximity of approximately three months between the "adverse-employment decision and the protected activity is sufficient under the [*McDonnell Douglas*] burden-shifting analysis outlined above to meet [the Plaintiff's] initial

'relatively light' burden of establishing the causation portion of a prima facie case for workers'-compensation retaliation." *Gauthier*, 2015 VT 108, ¶ 19 (collecting cases).

The temporal proximity between the adverse employment decision and Plaintiff's protected action of filing a worker's compensation claim is sufficient for Plaintiff to satisfy the causation element of her prima facie case. Defendant sent Plaintiff a letter dated May 11, 2016, informing her that she had exhausted her FMLA and VPFLA leave entitlements, and that she had not completed any paperwork for short-term disability or worker's compensation. Def. SUF ¶ 56. The letter also stated that an employee had communicated with Plaintiff and requested that Plaintiff complete paperwork. Def. SUF ¶ 56. The letter further advised that Defendant would consider Plaintiff's absence to be a "voluntary resignation" and terminate her position if it did not hear from her by May 16, 2016. Def. SUF ¶ 56. Plaintiff filed her worker's compensation claim on May 12, 2016 and was terminated effective May 20, 2016.[34]

Considered in the light most favorable to Plaintiff, and affording Plaintiff all reasonable inference and assumptions, Plaintiff has satisfied the causation element of her prima facie case.
When considering only the temporal proximity between the protected action (Plaintiff's May 12, 2016 worker's compensation claim) and the adverse employment decision (Plaintiff's May 20, 2016 termination), *Gauthier* provides that the temporal proximity between the two dates is sufficient to satisfy the causation element of the prima facie claim.

Plaintiff has met her initial burden of making out a prima facie case of retaliation for filing a worker's compensation claim.[35]

## 2. Defendant's legitimate, nonretaliatory reason for termination

Defendant has met its burden of production by providing a legitimate, nonretaliatory reason for Plaintiff's termination. See *supra*, 9–10. The burden shifts back to Plaintiff, who must prove that Defendant's proffered reasons were pretextual.

## 3. Pretext

As the Vermont Supreme Court explained, "bluntly stated, to show pretext, a plaintiff must establish that the defendant's proffered legitimate, nondiscriminatory reason is a lie." *Gauthier*, 2015 VT 108, ¶ 22 (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015)). As the party with the ultimate burden of persuasion, Plaintiff's pretext showing burden at the summary judgment stage requires that Plaintiff "must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination . . . ." *Gauthier*, 2015 VT 108, ¶ 22 (quoting *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.2d 107, 123 (2d Cir. 2004)). "Only rarely will a *prima facie* case of discrimination plus evidence of pretext be insufficient to carry the ultimate question of discrimination to a jury." *Kwon v. University of Vermont and State Agricultural College*, 912 F.Supp.2d 135, 144 (D. Vt. 2012) (internal citation omitted).

---

[34] SMFD at ¶ 70 (citing See WC Incident report, dated 5/12/16, **Ex. 24**; termination Letter, dated 5/20/16 and postmarked 5/24/16, **Ex. 19**).

[35] Given the ultimate outcome of this summary judgment determination, discussion need not resolve whether May 11, 2016 letter would distinguish this case from *Gauthier*'s temporal proximity holding.

### a. Shifting reasons for termination

As with her preceding claims, Plaintiff argues here that Defendant gave "shifting" reasons for her termination. Pl. Sur-Reply 31–32. These arguments are addressed in greater detail above. See *supra*, 10–16. Plaintiff introduces no novel argument that warrants departure from the corresponding conclusion reached for Count Two. Plaintiff has not presented admissible evidence from which a reasonable juror could find weaknesses, implausibility, inconsistencies, or contradictions in Defendant's reasons for terminating Plaintiff.

### b. Temporal proximity

Plaintiff also argues that the temporal proximity is demonstrative of pretext. Evidence sufficient for Plaintiff's initial burden of making out a prima facie case may also be relevant to Plaintiff's burden of showing that Defendant's proffered legitimate, nondiscriminatory reasons for terminating were pretextual. *Reeves*, 530 U.S. at 146.

Plaintiff's temporal proximity arguments meet the same fate as in the preceding counts. While Plaintiff's temporal proximity arguments may have sufficed for Plaintiff's causation showing in her prima facie case, the same cannot be said for Plaintiff's burden to present sufficient, admissible evidence that would permit a trier of fact to conclude that Defendant's legitimate, nondiscriminatory reason was pretextual.

Plaintiff's temporal proximity arguments establish only that there was an eight-day span between the date she filed her claim and the date of her termination.[36] Viewed in the light most favorable to Plaintiff, the May 11, 2016 letter contextualizes the short period between the date Plaintiff filed the worker's compensation claim and the date Defendant terminated Plaintiff.

The May 11, 2016 was not a definitive notice of termination that preceded Plaintiff's May 12, 2016 workers' compensation claim, as was the case in *Robertson*, 2004 VT 15, ¶ 46 (temporal proximity could not demonstrate causation, where adverse employment action preceded Plaintiff's protected action of filing a complaint under Vermont Fair Employment Practices Act). However, the May 11, 2016 letter did inform Plaintiff that she had not exhausted her leave entitlements, that she not completed paperwork for short-term disability or worker's compensation, and that "Defendant would consider Plaintiff's absence to be a "voluntary resignation" and terminate her position if it did not hear from her by May 16, 2016. Def. SUF ¶ 56.

Plaintiff went into the office the following day and completed the paperwork for her workers' compensation claim. Def. SUF ¶ 57. However, Plaintiff did not otherwise return to the work or demonstrate her ability to fulfill the essential functions of her position, Def. ¶ SUF ¶ 61, and Defendant subsequently terminated Plaintiff effective May 20, 2016—just as Defendant had explained it would in the May 11, 2016 letter.

---

[36] Plaintiff repeatedly refers to May 24, 2016 as the date of her termination, but Plaintiff has not articulated why the postmark date is material. On page 32 of her Sur-Reply, Plaintiff writes: "Angie filed her incident report on May 12, 2016. SMFD at ¶ 70 (citing See WC Incident report, dated 5/12/16, Ex. 24; termination Letter, dated 5/20/16 and postmarked 5/24/16, Ex. 19). Mack wrote her termination letter dated May 20, 2016. Id. On May 24, 2016 Mack's carrier denied her claim and Mack mailed her aforementioned termination letter. Id. The 12-day span between filing the claim and termination could lead a reasonable jury to believe her claim was the reason Mack fired her."

Viewed in the light most favorable to Plaintiff, the temporal proximity between the May 12, 2016 workers' compensation claim and Plaintiff's May 20, 2016 termination, when considered in light of Defendant's express statements in the May 11, 2016 letter, cannot demonstrate pretext.

### c. Additional circumstantial evidence

Plaintiff presents additional circumstantial evidence to pretext. Several of Plaintiff's arguments attempt to demonstrate pretext by showing that Defendant had obstructed or attempted to discourage Plaintiff's attempts to file a worker's compensation claim.

Plaintiff asserts that Defendant told Plaintiff and the workers' compensation carrier that Plaintiff was not hurt at work. Pl. Sur-Reply at 33. Plaintiff also argues that Defendant did not follow their own policy and practices when Plaintiff was injured. Pl. Sur-Reply at 33, Pl. SMFD ¶ 57. Plaintiff's argument that Defendant did not follow their own policy and practices does not demonstrate pretext because the argument does not suggest any apparent basis from which a trier of fact could conclude that Defendant's proffered reasons were pretextual.[37]

Plaintiff next asserts that Defendant "refused to mail or send home the worker's compensation form with her husband who still worked there." Pl. Sur-Reply 33–34. Plaintiff argues that "a jury could believe that Patty was trying to discourage Angie from completing the forms to give them excuse to fire her because there is no such policy in Mack's handbook and Patty could not articulate a reason for the alleged rule." Pl. Sur-Reply at 33–34.

Plaintiff cites testimony of Defendant's employee Patty Plesko, who testified that she did not mail Plaintiff form or send the form home with Plaintiff's husband because it was the company's practice that the employees "come in and fill out a form." Pl. Ex. 18, 15:15–16. Ms. Plesko's explanation of the company practice does not comprise per se evidence of pretext, and Plaintiff offers no further explanation as to why this policy might discouraging an employee from filing a worker's compensation claim. Plaintiff's argument that a jury could believe Defendant "was trying to discourage [Plaintiff] from completing the forms to give them excuse to fire her because there is no such policy in [Defendant's] handbook and Patty could not articulate a reason for the alleged rule" is unpersuasive.[38]

Finally, Plaintiff attempts to show pretext by arguing that Defendant "was retaliating against [Plaintiff] for filing a claim because they were worried about the money it was costing them." Pl. Sur-Reply at

---

[37] Once again, Plaintiff's argument that Defendant "deviated from its own standard procedures" is undermined by its own premise. Plaintiff was not receiving worker's compensation benefits, and the policy Plaintiff references in connection with this argument was a policy providing that Defendant "Defendant "may provide, when available transitional duty assignments (i.e. light duty) for employees who receiving worker's compensation benefits and who are able to work, but not able to perform the essential functions of their position." Pl. Sur-Reply at 18 (citing Pl. Ex. 38 at 10-2). Plaintiff has not presented admissible evidence to show that the alleged denial of light duty was a deviation of policy that might demonstrate pretext.

[38] Plaintiff does not argue that the employer's policy of having employees fill out the requisite forms in person in any way prohibited or discouraged an employee from filling out a form. Plaintiff's own actions illustrate this point: after receiving this information, Plaintiff came into the office and completed the form. Def. SUF ¶ 57.

34. Even assuming for purpose of argument that the relevant portions of Pl. Ex. 3 are admissible, the cited deposition transcripts are insufficient to support Plaintiff's assertion that Defendant was retaliating against Plaintiff because it was worried about the financial cost of those workers' compensation claims. The cited evidence shows that Kathy Hall testified (1) that plant managers discussed reducing workers compensation injuries by discussing safety to avoid injuries, and (2) that she would discuss the cost of workers' compensation injuries with the insurance company, the plant managers, and the company presidents. This evidence could not permit a reasonable trier of fact to find that Defendant terminated Plaintiff for pretextual reasons because it wanted to avoid the cost of a workers' compensation claim.

Plaintiff has failed to meet her burden of adducing "enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination . . . ." *Gauthier*, 2015 VT 108, ¶ 22. Plaintiff's evidence, considered in the light most favorable to Plaintiff, could not permit a trier of fact to conclude that Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff were pretextual.

For all the preceding reasons, summary judgment is GRANTED for Defendant with respect to Count Four.

## Order

WHEREFORE, it is hereby ORDERED, Defendant Mack Molding Company Inc.'s Motion for Summary Judgment is GRANTED. This matter is dismissed. An order of judgment in favor of Defendant shall issue.

_____
Hon. John W. Valente
Vermont Superior Court Judge